Wachtler, J.
This appeal, arising in the context of an apparently bitter dispute between a school district and a teachers’ association, concerns the seldom considered tort of abuse of process. The school district contends that the association and its attorney are liable for abusing legal process by subpoenaeing, with the intent to harass and to injure, 87 teachers and refusing to stagger their appearances. As a result the school district was compelled to hire substitutes in order to avert a total shutdown. The issue on appeal is whether the complaint states a cause of action.
The controversy began in March, 1972 when a number of teachers employed by the district were absent from their classes on two successive days. The school district considered this illegal and the teachers’ association was charged with violating the so-called Taylor law (Civil Service Law, § 210, subd 1) by the Public Employees Relations Board (PERB). The association vehemently denied having engaged in or condoned a strike and the matter was scheduled for a hearing to be held on October 5, 6, 10 and 11.
The complaint contains the following version of the ensuing events. Sometime between September 5, 1972 and October 5, 1972, the attorney for the association prepared and issued judicial subpoenas duces tecum to 87 teachers in order to compel their attendance as witnesses on October 5. The school district learned of these subpoenas on or about October 3, 1972 when the individual teachers requested approved absences from teaching duties in accordance with the collective bargaining agreement. The complaint further alleges that the district’s prompt oral request that the majority of teachers be excused from attendance at the initial hearing date was *400 refused by the defendant. Indeed, the defendant refused even to grant the request to stagger the appearances. Consequently all 87 teachers attended the hearing and 77 substitute teachers were hired to replace them. Based on these allegations, the school district asserts three causes of action.
The first alleges an abuse of process in that the defendants wrongfully and maliciously and with intent to injure and harass the plaintiff issued 87 subpoenas with knowledge that all the teachers could not have possibly testified on the initial hearing date. As damages for this cause of action plaintiff seeks the amount expended to engage substitute teachers and an amount representing the aggregate salary of the subpoenaed teachers. The second cause of action reiterates the allegations of the first and prays for punitive damages; while the third alleges defendants’ conduct constituted a prima facie tort. Defendants moved to dismiss primarily for failure to state a cause of action (CPLR 3211, subd [a], par 7). Special Term denied this motion and the Appellate Division affirmed with one Justice dissenting.
In its broadest sense, abuse of process may be defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process. It has been observed that this tort is an obscure one (Italian Star Line v United States Shipping Bd. Emergency Fleet Corp., 53 F2d 359, 361) one which is rarely brought to the attention of the courts (Dishaw v Wadleigh, 15 App Div 205, 209) and the vital elements of which are not clearly defined (see, generally, Prosser, Torts [4th ed], § 121; 1 Harper & James, Torts, § 4.9; Harper, Torts, § 272; Restatement, Torts, § 682; Cooley, Torts [4th ed], § 131).
Abuse of process, i.e., causing process to issue lawfully but to accomplish some unjustified purpose, is frequently confused with malicious prosecution, i.e., maliciously causing process to issue without justification. Although much of the confusion is dispelled on careful analysis, it must be noted that both torts possess the common element of improper purpose in the use of legal process and both were spawned from the action for trespass on the case in the nature of conspiracy. In order to fully understand the nature of abuse of process a consideration of its origin and evolution is necessary.
Like many causes of action, abuse of process is rooted in the interstices of various common-law concepts. It is important to keep in mind that when a party abuses process his tortious *401 conduct injures not only the intended target but offends the spirit of the legal procedure itself. Insofar as it relates to the harm inflicted on the individual, abuse of process finds its origin in the writ of conspiracy. The earliest meaning ascribed to this writ is extremely vague but refers to improper meddling in a legal dispute (Winfield, History of Conspiracy and Abuse of Legal Procedure, ch I). Eventually this writ came to mean several parties allying to procure a false accusation. However, because of its narrow scope, the writ of conspiracy gradually fell into disuse.
It was superseded by a more malleable form of action; known as an action of case in the nature of conspiracy. This action had a checkered development, due in large measure to the competing policies of seeking to deter false accusers while trying to encourage just ones (compare Jones v Gwynn, 10 Mod 214 [12 Anne, BR] with Hercot v Underhill & Rochley, 2 Bulst 331 [12 Jac I]). Throughout this evolution glimpses of two additional concerns are discernible. The use of process to serve the purposes of oppression or injustice was deemed punishable as contempt (see 8 Halsbury’s Laws of England [3d ed], pp 16-17 and cases there cited) and also as giving rise to an action for injury to reputation (see Winfield, History of Conspiracy and Abuse of Legal Procedure, ch V, pp 126-127 and cases there cited).
It was at this juncture that the tort of malicious prosecution emerged as a distinct concept and was fully recognized in the case of Savile v Roberts (1 Ld Raym 374 [10 Will III, BR]). There, Lord Holt, C.J., noted that while the existence of such an action was not a question of first impression, it was clear that contriving to injure someone by pretense and color of legal process demanded redress because it resulted in a loss of reputation, anxiety and the expenditure of funds in defense. With Savile, malicious prosecution was firmly ensconced in the common law (see, e.g., Brown v Chapman, 1 W B1 427 [3 Geo III]; Quartz Hill Cons. Gold Min. Co. v Eyre, 11 QBD 674; Winfield, Present Law of Abuse of Legal Procedure, ch VI).
The tort of abuse of process makes its first independent appearance in Grainger v Hill (4 Bing NC 212). The plaintiff in that case was the owner and captain of a certain vessel who borrowed a sum of money from Hill and others. Although the loan was secured by a mortgage on the vessel, the defendants were desirous of possessing the ship’s register. To accomplish this end they sued Grainger in assumpsit and caused a writ of *402 arrest to issue. Thereafter Grainger, who was wounded and bedridden, was threatened with incarceration unless he delivered the register to defendants. Rather than go to jail he succumbed and relinquished the register. Grainger then sued defendants for procuring the writ of arrest (p 212) "wrongfully, illegally, and maliciously contriving to injure, harass, and distress the plaintiff, and to compel [him] * * * to give up and relinquish to them * * * a certain register” and certificate of registry to his ship. The court affirmed a judgment in favor of plaintiff. One Judge noted that this was a case of first impression which involved a new species of injury and that a new action must be fashioned according to the particular circumstances. The court held that this action was not for maliciously putting process in force (malicious prosecution) but rather was an action for maliciously abusing the process of the court. It was further held that since process was used to effect an object not within the scope of the process, it was immaterial whether the original suit had been terminated or whether it was founded on probable cause. The employment of process to extort property was, of itself, a sufficient cause of action. These basic principles have been carried forward into modern times and are recognized in this country (Addison, Torts [6th ed, 1887], ch I, § 1, p 33).
In New York, actions based on abuse of process, that is, the tortiousness of using legal process to attain some collateral objective can be found in the earliest reported cases (Holley v Mix, 3 Wend 350; Brown v Feeter, 7 Wend 301; Baldwin v Weed, 17 Wend 224; Rogers v Brewster, 5 Johns 125; Bebinger v Sweet, 6 Hun 478; Hazard v Harding, 63 How Prac 326). One early appellate case warrants discussion as a classic example of abuse of process. Dishaw v Wadleigh (15 App Div 205, supra) involved an attorney who assigned claims to an associate living in another part of the State for the purpose of having the associate institute proceedings. The idea behind it was to make it easier to pay the claim than to submit to the discomfort and expense of attending a distant court. Ruling in favor of plaintiff, the court rejected the argument that the procedure utilized was strictly legal. The court expressed the view that such trickery and cunning was "degrading to an honorable profession, and well calculated to bring the administration of justice into reproach and contempt” (p 209; see, also, Foy v Barry, 87 App Div 291).
Abuse of process was first considered by our court in Dean v *403 Kochendorfer (237 NY 384), apparently the only time, to date, in which we sustained such a cause of action. There in a suit against a Magistrate for willfully issuing an arrest warrant for disorderly conduct, the court held that it was enough to show that regularly issued process was perverted to the accomplishment of an improper purpose. On the basis of the complaint the court inferred that the Magistrate had issued the warrant to show his authority and to gratify his personal feelings of importance. Since this act was one which the court felt (p 390) "savors of oppression” it was concluded that it constituted an abuse of process.
The tort was next before our court in Hauser v Bartow (273 NY 370), where we ruled that the complaint failed to state a cause of action. The complaint alleged abuse of process by virtue of defendant’s having had plaintiff declared incompetent and having herself named as his committee in order to gain financial benefit. We concluded that proof of ulterior motive was not sufficient. In order for the conduct to be considered tortious there must be something "done outside the use of the process—a perversion of the process” (p 374). Emphasizing that there had been a conclusive adjudication of the validity of the order appointing defendant as committee and that an accounting revealed no impropriety in the management of his property we went on to hold that there had been no perversion of process.
More recently, in Williams v Williams (23 NY2d 592), we held that a complaint in another action which had been mailed to members of the trade was not process capable of being abused.
Despite the paucity of New York authority, three essential elements of the tort of abuse of process can be distilled from the preceding history and case law. First, there must be regularly issued process, civil or criminal, compelling the performance of forebearance of some prescribed act. Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification (cf. James v Board of Educ. of Cent. School Dist. No. 1 of Towns of Orangetown & Clarkstown, 37 NY2d 891). Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process.
Assuming the truth of the facts pleaded along with every favorable inference (Williams v Williams, 23 NY2d, at p 596, *404 supra; Cohn v Lionel Corp., 21 NY2d 559; Howard Stores Corp. v Pope, 1 NY2d 110) and applying the above principles, we find that the complaint before us is sufficient to state a cause of action for abuse of process. The subpoenas here were regularly issued process, defendants were motivated by an intent to harass and to injure, and the refusal to comply with a reasonable request to stagger the appearances was sufficient to support an inference that the process was being perverted to inflict economic harm on the school district.
While it is true that public policy mandates free access to the courts for redress of wrongs (Burt v Smith, 181 NY 1; Miller v Stern, 262 App Div 5; Doane v Hescock, 173 App Div 966) and our adversarial system cannot function without zealous advocacy, it is also true that legal procedure must be utilized in a manner consonant with the purpose for which that procedure was designed. Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party.
The appellants raise several arguments against the sufficiency of this complaint. The most troublesome contention raised is that it is standard, appropriate and proper practice to subpoena all witnesses for the first day of any judicial proceeding. While we acknowledge this as appropriate procedure and in no way intend this decision to proscribe it, we are obligated to determine appeals in the context in which they are presented. Here we consider solely whether the complaint states a valid cause of action. If the proof at trial establishes that defendants attempted to reach a reasonable accommodation at a time when the accommodation would have been effectual, the cause of action will be defeated. However, on its face an allegation that defendants subpoenaed 87 persons with full knowledge that they all could not and would not testify and that this was done maliciously with the intent to injure and to harass plaintiff spells out an abuse of process. Another factor to be weighed at trial is whether the testimony of so many witnesses was material and necessary. As this complaint is framed, it may be inferred that defendants were effecting a not too subtle threat which should be actionable.
The dissent in the Appellate Division responds to this point by noting that the school district was not a party to the PERU proceeding, therefore defendants did not stand to gain collateral advantage, a requisite element of the alleged tort. While *405 it is true that plaintiff was not a party to that proceeding, it is equally true that they were not disinterested bystanders. More important the deliberate premeditated infliction of economic injury without economic or social excuse or justification is an improper objective which will give rise to a cause of action for abuse of process.
In the same vein, defendants contend that the school district cannot bring this action because the alleged abusive process was not issued against them. Although there is support for this proposition (see, generally, Restatement, Torts, § 682) we reject it. To hold that the party whom the defendants seek to injure and who has suffered economic injury lacks standing would be to defy reality. Accordingly, the tort of abuse of process will be available to nonrecipients of process provided they are the target and victim of the perversion of that process.
As to the argument that no action exists against defendant attorney due to the lack of allegations implicating him, we need only cite Dishaw v Wadleigh (15 App Div 205, supra), discussed previously.
Turning to the question of damages, we note that to sustain the first cause of action plaintiff must allege and prove actual or special damages in order to recover (Bohm v Holzberg, 47 AD2d 764). Plaintiff has satisfied this requirement by asserting damages in the amount expended to hire substitutes. However, we reject the claim for damages representing the salaries paid to the subpoenaed teachers. There is no justification for that element of damages, particularly in view of the fact that these were approved absences within the meaning of the collective bargaining agreement. Accordingly, that element of damages should be stricken from the complaint. As to the second cause of action for punitive damages we see no obstacle to its maintenance, contingent on the establishment of malice.
Lastly, we conclude that the third cause of action for prima facie tort is sufficient insofar as it refers to the intentional infliction of economic harm by forcing plaintiff to hire a great many substitutes. It does not matter whether the action is denominated a so-called "prima facie tort” or is called something else (Hauser v Bartow, 273 NY 370, 377, supra [Crane, Ch. J., dissenting]; Keller v Butler, 246 NY 249, 254; Morrison v National Broadcasting, Co., 24 AD2d 284 [Breitel, J.], revd on other grounds 19 NY2d 453). Although in Opera on Tour v *406 Weber (285 NY 348), the court referred to a prima facie tort (with less than an accurate reference to the theory which Mr. Justice Holmes had articulated in Aikens v Wisconsin, 195 US 194, 204) that term is merely an inaccurate mislabel and the plaintiffs right to maintain an action does not hinge on the label used (Knapp Engraving Co. v Keystone Photo Engraving Corp., 1 AD2d 170, 172). The operative fact here is that defendants have utilized legal procedure to harass and to oppress the plaintiff who has suffered a grievance which should be cognizable at law. Consequently whenever there is an intentional infliction of economic damage, without excuse or justification, we will eschew formalism and recognize the existence of a cause of action.
The Appellate Division majority in this case concluded that a cause of action in prima facie tort cannot exist where all the damages sustained are attributable to a specific recognized tort (citing Ruza v Buza, 286 App Div 767, 769;* Metromedia, Inc. v Mandel, 21 AD2d 219, affd 15 NY2d 616). It is our view that a modern system of procedure, one which permits alternative pleading, should not blindly prohibit that pleading in the area of prima facie tort. Of course, double recoveries will not be allowed, and once a traditional tort has been established the allegation with respect to prima facie tort will be rendered academic. Nevertheless there may be instances where the traditional tort cause of action will fail and plaintiff should be permitted to assert this alternative claim.
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion, and as modified, affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order modified, with costs, in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.

 Although Chief Judge Breitel, writing then for the Appellate Division, seemed to accept the "prima facie tort” as a distinct cause of action, he later applied a more refined and acceptable approach when writing for the court in Morrison v National Broadcasting Co. (supra). It is this later approach which is adopted today by this court.