OPINION OF THE COURT
George J. Aspland, J.
The corporate plaintiff purchased a bar and grill at 1850 Jericho Turnpike, Elwood, New York, in April, 1969. Plaintiff, William De Pascale, is president of the corporation and owner.
*110 In June, application was made to defendant for the issuance of a certificate of permitted use and the fee paid therefor. Applied for and obtained at about the same time, was a liquor license from the State Liquor Authority.
In 1970, plaintiffs received a letter from the town to the effect that a certificate of permitted use would be released if certain plumbing permits were delivered to it. The town was advised that no plumbing work had been performed, and the matter was not further pursued.
Commencing on June 17, 1971 and continuing for two months and a half, plaintiffs were served with a total of 40 criminal summonses returnable in the District Court, by far the greater bulk of which charged violations of the town code in that plaintiffs had no certificate of occupancy or certificate of permitted use. On several of the summonses, there were joined with the above-cited violations, the alleged illegal maintenance of a sign without a permit and illegal maintenance of a free standing type sign without a permit.
No prior notice of these violations had been given by defendant, although there was testimony by one of its employees that prenotification was the customary procedure.
On June 20, 1971, plaintiffs again filed for a certificate of permitted use, once more paying the required fee.
A meeting between the parties took place on August 5, 1971, wherein a list of purported violations was presented to plaintiffs. These violations were all corrected on or before August 30, 1971. Despite this, six more summonses were issued in September, 1971, which, although not related to the list of August 5, continued to repeat the complaints of no certificates of occupancy or use.
Before the summonses came to trial, defendant town, in September, 1971, began an action in the Supreme Court to enjoin the plaintiffs from operating the bar and grill. The basis for the action was that there were no certificates of occupancy or permitted use for the premises, also that a serious fire violation existed thereon.
Trial took place before the Honorable Frank P. De Luca in June, 1972, and the result was that plaintiffs were granted (1) judgment on their counterclaim enjoining the town from prosecuting the violation of ordinance proceedings pending in the District Court, and (2) a direction to the town to issue a certificate of permitted use for the said premises upon the *111 filing of a proper fire underwriters’ certificate. The complaint for an injunction was dismissed.
The summonses in the District Court were dismissed as a result of the decision by Justice De Luca.
An appeal was taken to the Appellate Division from the judgment entered thereon, and that court, on February 4, 1974, unanimously affirmed same. (43 AD2d 1019.)
In April, 1974, defendant town instituted another action in the Supreme Court for a judgment declaring that the on-site parking facilities located at plaintiff’s premises did not comply with either the prior Building Zone Ordinance of the Town of Huntington or the present code.
The court, by order of the Honorable William R. Geiler, dismissed the action for a declaratory judgment, saying that it was nothing more than an attempt to relitigate the issues decided by Justice De Luca, or which could have been litigated in the previous action. The town was directed to issue a certificate of change of use within 10 days after service of a copy of the order upon it. Such copy was served upon the town on June 20, 1974.
The fire underwriters’ certificate, dated August 28, 1972, required by Justice De Luca’s judgment, was filed with the town by plaintiffs’ attorney shortly after the entry of judgment.
Despite the court’s mandates, no intermediate changes in the premises, and repeated requests therefor, no certificates were issued to plaintiffs by defendant until January 16, 1978, at which time a certificate of occupancy was forthcoming.
The present action was instituted in November, 1974, setting forth four causes of action, each for damages of $500,000 plus $100,000 in punitive damages. The first cause of action is for malicious prosecution; the second, abuse of process; the third for the intentional and unjustifiable refusal to issue certificates of occupancy and permitted use; and the fourth for willful failure to comply with the mandate of the town code respecting the issuance of certificates of occupancy and permitted use after presentation of a proper fire underwriters’ certificate.
In their development of evidence, plaintiffs sought to prove damages by reason of the following:
(1) Failing mental health of Mr. De Pascale, occasioned by *112 the harassment by the town in unreasonably and persistently refusing to issue certificates;
(2) Reduction in business receipts because plaintiff De Paséale was kept in a state of quandary, never knowing when his place might be closed up, and hesitating to fix up or expand the premises, thereby making it less attractive with an ensuing loss of patronage;
(3) Marital problems arising by reason of De Pascale’s mental depression, brought on by the town’s pressure upon him, leading eventually to a divorce after 21 years of marriage;
(4) Devaluation of the worth of the business. As time passed by, the period remaining in the lease diminished, proceeds fell off, the bar and grill suffered deterioration, and opportunities to sell the business were lost since no one was interested, there being no certificate of occupancy.
In Broughton v State of New York (37 NY2d 451, 457) the Court of Appeals stated: "The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice”.
While the criminal summonses were eventually dismissed herein, and the two Supreme Court suits unsuccessful, it cannot be said that technically, at least, defendant did not have probable cause. Actually, plaintiffs did not have the certificates required by law and were vulnerable throughout this period in that regard. Indeed, Justice De Luca’s decision ordered the issuance of a certificate of permitted use upon the filing of a fire underwriters’ certificate. The latter was not furnished until after the decision.
The cause of action for malicious prosecution is, therefore, dismissed for want of an essential ingredient, to wit: lack of probable cause.
As to the tort of abuse of process, quoting from New York Jurisprudence (Vol 1, Abuse of Process, § 3, pp 56-57):”The gravamen of an action for abuse of process is wilfully using legal process, either civil or criminal process, for a purpose not justified by law, and to effect an object not within its proper scope * * * To constitute actionable abuse of process *113 the process of law must be used improperly and this means something more than a proper use from a bad motive.”
Again, from the same source (1 NY Jiir, Abuse of Process, § 5, pp 59-60):
"In order to support an action for abuse of process there must be either an injury to or an interference with the person or property of the plaintiff under color of process; mere indirect injury to a person’s business or his good name is not sufficient.
"The plaintiff must prove irregular steps taken under cover of the process after its issuance, and damage to the plaintiff resulting therefrom. If the person is not arrested, or his property not seized, no matter how unfounded the action may be, there is no abuse of process. The legal and legitimate use of process, though with bad intent, is not an abuse thereof.”
There was no arrest in this case, no closing down of the operation, or other interference with property, and consequently, the cause of action for abuse of process is dismissed.
. The court considers the third and fourth causes of action to coincide, in that by intentionally refusing and failing to issue the certificates, defendant did not heed the ordinances mandating such issuance.
These causes sound in prima facie tort which has been defined, as stated in New York Jurisprudence (Vol 59, Torts, § 23, p 137): " 'the infliction of intentional harms resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful.’ ”
The lengths to which defendant went to avoid the issuance of certificates to plaintiff was unbelievable in this day and age when prompt response to the reasonable demands of the public is to be expected from a local government. Yet, in this situation, without prenotification so that violations, real or otherwise, could be cured or other solution reached, court action was three times instituted, and, in the case of the summonses, a ridiculous overkill of process issued. No over-all reason for the unrelenting attitude of the town was ever given. Perhaps it was because plaintiffs’ establishment had topless dancers as a form of entertainment, although this was never brought out at the trial.
As Justice De Luca stated in his memorandum decision in the injunction suit: "In summary, the record indicates an unwarranted and unreasonable display of governmental power *114 being improperly brought to bear against the defendants. The allegations of the complaint concerning lack of certificate of occupancy were refuted by production of several certificates for the premises. In making proper application for a permitted use, defendants should not be penalized for the sins of omission of the landlord and prior owners. All agreed that defendants promptly complied with town directions in curing any violations and defendant De Pascale indicated that the fire underwriters’ certificate would have been forthcoming, had it not been for the veritable barrage of summonses.”
Before finally issuing the required certificate in 1978, the town disobeyed court orders, remained obdurate in the face of repeated requests by plaintiff, showed an utter disregard for the legitimate business needs of a member of the town constituency, and revealed a complete lack of the co-operation between taxpayer and government that should have been the norm.
Under the circumstances, the court finds the commission of a prima facie tort by defendant in its intentional refusal to issue the certificates. Its attitude over such a lengthy period of time evokes the inescapable conclusion that the prosecution, if not persecution, of plaintiff was planned and stubbornly clung to from the first by preconceived design.
The question of what damages plaintiff is entitled to as a consequence of the foregoing is resolved as follows:
Plaintiff De. Pascale has not established by a fair preponderance of evidence that his decline in health and eventual divorce are attributable to the vexatious conduct of defendant. In addition, such results are too remote and speculative to provide a sound basis for damages.
The alleged loss of business was not causally related to the acts of defendant on the evidence adduced by plaintiffs. There was a dearth of records produced which could adequately substantiate plaintiffs’ claims of loss. The very manner of operation of a cash business such as a bar and grill lends the possibility of inaccurate reporting of actual gross receipts and would require strong corroboration for claimed losses to become credible.
The testimony of plaintiffs as to lost opportunities to sell the business is again not backed up by the testimony of any would-be buyers. The allegations in this respect are self serving and not subject to independent verification. It is noted *115 that at no time was the business given to brokers who specialize in finding purchasers for bars and grills.
With respect to attorneys’ fees incurred, however, a different aspect is presented. Not being a lawyer himself, and beleaguered by the multitude of suits instituted, plaintiff De Pascale, for himself and his corporation, accordingly engaged legal counsel to defend as to the criminal court summonses, the injunction action, the appeal which followed it, and the declaratory judgment action decided by Justice Geiler. In addition, his attorney engaged in numerous contacts with the town, personally and through correspondence, in vain attempts to obtain the desired certificates.
The attorney has testified that the reasonable, total value of his services rendered to plaintiffs, amounted to $9,300, that the clients had paid this amount, and, in addition, $163.40 disbursements, making in all $9,463.40.
Plaintiff De Pascale testified that he was required to be in court on at least seven occasions, causing him a loss of vacation and sick days at $55 a day (he was and is a regular employee of the County of Nassau). This testimony is credible and he is allowed as damages, the sum of $385 on this claim.
The case of United Pickle Co. v Omanoff (63 AD2d 892) is cited as authority for the award of the amount of legal expense incurred as damages to plaintiffs. Therein the court said (pp 892-893): "Nevertheless we see no impediment here to the recovery of attorneys’ fees, as damages, for malice is the gravamen of the conspiracy appellant was found to have been engaged in. (Mastic Fuel Serv. v Van Cook, 55 AD2d 599.) He intentionally sought to inflict economic injury on respondents by forcing them to engage legal counsel. This was actionable wrong. The fact that the devices he utilized to harass and oppress them were legal procedures does not relieve him from liability for those legal fees (cf. Board of Educ. v Farmingdale, 38 NY2d 397, 406), since they constitute respondents’ harm. To be recoverable those damages must have been proximately related to the malicious acts and the acts themselves must have been entirely motivated by a disinterested malevolence”.
From New York Jurisprudence (Vol 13, Damages, § 147, p 652): "Counsel fees as damages may be allowed * * * and in the absence of statute, in a limited class of cases, counsel fees necessarily incurred may be recovered, as in certain classes of tort actions where the gravamen of the action is malice.”
The court finds malice in the conduct of defendant *116 within the following definition of it (36 NY Jur, Malicious Prosecution, § 26, p 286): "Generally speaking, malice may consist of any personal hatred or ill will, any improper or sinister purpose, or any reckless disregard of the rights of others which is inconsistent with good faith or the mere purpose to further the ends of justice.”
Acting within the discretion resident in the court in such matters (Binghamton Plaza v Gilinsky, 32 AD2d 994), plaintiffs’ request for punitive damages is denied. Also, quoting from Fuchsberg, Encyclopedia New York Law (Damages, vol 9, ch 5, § 65, p 55): "As regards municipal corporations it is only under very extraordinary circumstances, if ever, that exemplary damages will be awarded against them, and it has been stated that the question whether a municipality may be held accountable for exemplary or punitive damages in the absence of statutory sanction is not free from doubt.”
Several motions were made at the end of the trial, and these are dealt with thusly:
Defendant’s motion to dismiss the complaint is granted as to the first and second causes of action, and denied as to the third and fourth.
Defendant’s motion to strike damages for legal fees to plaintiffs is denied.
Plaintiffs, The Tender Trap, Inc., and William De Pascale, shall have judgment against defendant, Town of Huntington, in the total sum of $9,848.40, together with interest on the said sum from the time of the commencement of this action.