Don G. ANGELL and Angell Group
Incorporated, Petitioners,

v.

SHAWMUT BANK CONNECTICUT
NATIONAL ASSOCIATION,
Trustee, Respondent.

SHAWMUT BANK CONNECTICUT
NATIONAL ASSOCIATION,
Trustee, Plaintiff,

v.

TOWERS FINANCIAL CORPORATION,
et al., Defendants.

Nos. 2:93MC46, 93CV1080(WK).

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Jan. 7, 1994.

David Fleissig, Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

Bowen Carey Houff, House & Blanco, P.A., Winston–Salem, NC, for defendants.

## ORDER

ELIASON, United States Magistrate Judge.

The matter before the Court is an ancillary proceeding arising out of an action filed in the federal court for the District of Connecticut on February 16, 1993 and transferred to the Southern District of New York two days later. Petitioners, Don G. Angell and Angell Group Incorporated (hereinafter denominated as "Angell"), have filed a motion pur-

suant to Fed.R.Civ.P. 45 to require respondent to pay the costs and expenses which Angell incurred in complying with subpoenas directed to them as non-parties.

In the main proceeding, plaintiff (respondent in these proceedings) Shawmut Bank Connecticut National Association, Trustee ("Shawmut"), has filed an action against defendant Towers Financial Corporation ("Towers") concerning certain bonds issued by Towers' subsidiaries. Shawmut discovered that Towers had failed to deposit certain proceeds into five Lockbox Accounts maintained by Shawmut as Trustee for bondholders. In its complaint, respondent alleged a massive fraud involving over $215 million and sought a temporary restraining order from the United States District Court for the District of Connecticut. The same was granted on February 16, 1993 and Shawmut began to prepare for the preliminary injunction hearing which was set for March 16, 1993.

In preparing for the hearing, and on March 7, 1993, Shawmut issued subpoenas from this Court to Angell and also issued subpoenas from other courts to two other similar health care providers. Angell's depositions were scheduled for March 11 and 12, 1993. However, prior to the hearing Shawmut and Towers entered into a stipulated protective order thereby obviating the need for the preliminary injunction hearing. Consequently, Shawmut's counsel called Angell's counsel on March 9, 1993 and stated that the documents previously sought pursuant to the subpoenas were no longer of immediate necessity but that Angell should produce the documents responsive to the subpoenas on or before March 22, 1993.

Angell did not object to the subpoenas. However, the parties did enter into an implicit and explicit agreement concerning the production of the documents. Thus, on March 9, 1993, petitioners' counsel informed respondent's counsel of the numerous files which were involved and located in other parts of the country. After consulting, the attorneys were able to agree to the terms of production and limit the document request. Petitioners began collecting, sorting and copying the documents. However, on April 15, 1993 petitioners were informed that compliance with the subpoenas was no longer required.

Petitioners' counsel avers that he told David Fleissig, respondent's attorney, about the burdensome task of complying with the subpoenas. Mr. Fleissig denies that he was ever told that the task of complying with the subpoenas would be "herculean." However, the Court finds that he did know that the original compliance would be time consuming because he admits, and the record shows, that the document request was, in fact, limited. This necessarily would involve some selection of documents. Mr. Fleissig also avers that Angell's counsel never requested Shawmut to reimburse Angell for their efforts in complying with the subpoenas. He further denies that he was advised by Angell that there would be "substantial expenses and effort" in complying with the subpoenas. Finally, Mr. Fleissig alleges that he never represented that respondent would reimburse Angell's counsel for work performed in compliance with the subpoenas. In his affidavit, however, he admits, "I merely told counsel for the Angell Group that Shawmut would pay the reasonable costs of copying any documents produced to Shawmut."

On or about April 19, 1993, respondent received an invoice from petitioners for $4,051.22 for services rendered in compliance with the subpoenas. Mr. Fleissig wrote back on April 22, 1993 that Fed.R.Civ.P. 45 did not provide petitioners with a right to compensation, and second, that he never agreed to reimburse Angell for the law firm's work but merely agreed to pay reasonable costs of copying the documents.

In June of 1993, petitioners filed their motion for compensation, seeking not only reimbursement of $4,051.22 for counsel's work in complying with the terms of the subpoenas, but also for reasonable attorney's fees for the motion. The total amount now sought by petitioners is $5,567.41. The breakdown of the costs and expenses are as follows. Sixty-three and one-half (63½) billable hours of attorneys' time at hourly rates from $70.00 to $135.00 producing an amount of $5,385.00. Expenses in the amount of $182.41 for mail, telephone charges, legal research and 29 copies of documents.

### Discussion

Respondent's first defense to petitioners' motion is that this Court does not have

jurisdiction to resolve the underlying dispute. The argument is based on the recent changes to Rule 45 as a result of the 1991 amendments.[1] Respondent acknowledges that the subpoenas were issued by this Court, but points out that the underlying litigation is not pending here. According to respondent, because petitioners' motion for production costs does not involve an objection to complying with a subpoena or a motion to quash or modify a subpoena under Rules 45(c)(2)(B) or 45(c)(3)(A), it must fall under Fed.R.Civ.P. 45(c)(1).[2] According to respondent, Rule 45(c)(1) only provides authority to the court where the litigation is pending to resolve disputes over whether a non-party is entitled to compensation for complying with a subpoena.

Respondent's argument is premised on the differential use of the prepositional phrases "the court on behalf of which the subpoena was issued" and "the court by which the subpoena was issued" in Rule 45(c)(1) and Rules 45(c)(2)(B) & (c)(3)(A), respectively. According to respondent, the different phrases must have a purpose.

Respondent notes that Rule 45(c)(1) speaks about a person applying for relief from the "court on behalf of which the subpoena was issued." By using the words "on behalf of," respondent contends the rule can only refer to the court wherein the action was filed and/or pending. Thus, respondent says that petitioners should have to make application to the federal court in New York. In contrast, courts such as this one, whose only connection with the action is that the subpoenas were issued by it, are allegedly limited to ruling on timely objections and motions to quash or modify subpoenas as provided for in Fed.R.Civ.P. 45(c)(2)(B) and 45(c)(3)(A).[3] In that instance, the rule

---

**1.** The Advisory Committee states that the purposes of the 1991 amendments are:

(1) to clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence; (2) to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties; (3) to facilitate service of subpoenas for depositions or productions of evidence at places distant from the district in which an action is proceeding; (4) to enable the court to compel a witness found within the state in which the court sits to attend trial; (5) to clarify the organization of the text of the rule.

9 Charles A. Wright, Arthur R. Miller & Frank W. Elliott, *Federal Practice and Procedure* § 2451 at 130–131 (Supp.1993) (footnotes omitted)

**2.** It should be noted that Fed.R.Civ.P. 45(c)(1) talks about enforcing the duty to avoid burdensome subpoenas with sanctions. However, as will be seen later, petitioners' motion does not request sanctions for wrongdoing but merely expenses. As such, the motion would not seem to fall within the purview of Rule 45(c)(1).

**3.** Fed.R.Civ.P. 45(c)(2)(B) and 45(c)(3)(A) provide:

**(c) Protection of Persons Subject to Subpoenas.**

     \*    \*    \*    \*    \*    \*

(2) ....

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time

specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of *the court by which the subpoena was issued.* If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(emphasis added)

(3)(A) On timely motion, *the court by which a subpoena was issued* shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or otherwise protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(emphasis added)

speaks about the court "by which the subpoena was issued." In respondent's view, the words "the court on behalf of" refers to the court where the action is pending and on whose behalf the subpoena was issued, while the words "the court by which" refers to the court which actually issues the subpoena.

A review of the other parts of Rule 45 does not support respondent's construction nor would it comport with the purpose of the rule. First, a reading of Rule 45 as a whole does not lead to the construction advocated by respondent. Under the rule, the clerk of court issues signed blank subpoenas to the parties and their attorneys who fill them out and serve them. Thus, Rule 45(a)(3)(B) provides that the subpoena may be served by an attorney, as an officer of the court, *on behalf of a court* where the deposition or production is compelled. In this context, the words "on behalf of" clearly refer to the court which issued the subpoena.[4] Thus, it does not appear that the rule makers intended to signify by the different phrases "on behalf of the court" and "the court by which" to differentiate between the court where the action is pending and the court from which the subpoena issued. Both phrases refer to the court which issued the subpoena. This is a practical, common sense construction of the phrases because parties serve subpoenas on behalf of the issuing court and such courts are ones by which the subpoena is issued.

Second, the new provision in Rule 45(c)(1) was not intended to work a change in previous law but only intended to state the existing rights of a person subpoenaed. The rule does mention that in a case of extreme provocation amounting to an actionable tort of abuse of process, the subpoenaed person can bring an action for recovery. Fed.R.Civ.P. 45 advisory committee's note, 1991 Amendment. However, it was specifically made clear this section was "not intended to diminish rights conferred by Rules 26–37 or any other authority." *Id.* Respondent's construction would restrict the relief afforded to non-party persons aggrieved by abuse of process, by forcing them to litigate the claim in a distant district which had not even issued the subpoena. The court whose process was abused has the most direct interest in such actions and prior to the 1991 amendments had the inherent authority to adjudicate controversies involving its own subpoenas. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2457 at 430–31 (1971); *Byrnes v. Jetnet Corp.,* 111 F.R.D. 68 (M.D.N.C.1986). Nothing in Rule 45 evinces a purpose to deprive such court of this authority. For this additional reason, respondent's construction is rejected and the Court finds it has jurisdiction over petitioners' motion for costs stemming from a subpoena issued by (or on behalf of) this Court.

■ While respondent is incorrect in alleging that this Court does not have authority or jurisdiction to enforce controversies involving its subpoenas pursuant to Rule 45(c)(1), it is correct in stating that petitioners have failed to state a cause of action for the tort of abuse of the subpoenas. The 1991 Advisory Committee Notes cite *Board of Ed. v. Farmingdale Classroom Teach. Ass'n,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975), in referring to the tort of abuse of process. That court noted that the first appearance, independent from malicious prosecution, of the tort occurred in *Grainger v. Hill,* 4 Bing.NC 212, 132 Eng.Rep. 769 (1838). Under similar North Carolina law,

> "[a]buse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ.... A power conferred by legal process may not be abused or exercised with unreasonable indignity or oppressive hardship to another. The abuse may be of a civil or criminal process." 1 Am.Jur., *Abuse of Process,* par. 2, p. 176. The distinctive nature of an action for abuse of process is the improper use of process after it has been issued, and not for maliciously causing it to issue.... There are two essential elements for an action for abuse of process, (1) the existence of an ulterior motive, and (2) an act in the use of the process not proper in the regular prosecution of the proceeding.

4. Moreover, Fed.R.Civ.P. 45(b) talks about a subpoena being "issued on behalf of the United States...." In that instance, the prepositional phrase "on behalf of" does not even refer to a court.

*Ellis v. Wellons,* 224 N.C. 269, 29 S.E.2d 884 (1944). Petitioners here merely seek recovery for complying with a burdensome subpoena and fail to allege or show any requisite ill intention and improper act under any standard.

Respondent's next argument is that petitioners' motion should be denied because they did not follow the appropriate procedure to obtain reimbursement. If petitioners thought the subpoenas were unduly burdensome, they had a duty under Rule 45(c)(2)(B) to make an objection within fourteen days or pursuant to Rule 45(c)(3)(A) to file a motion to quash or modify those subpoenas. They did neither. Under old Rule 45(d)(1), failure to file a timely objection resulted in waiver of the right to object to the subpoena. *Wang v. Hsu,* 919 F.2d 130 (10th Cir.1990). The 1991 amendments to Rule 45 extended the former ten day period to fourteen days in order to allow a little more time for such objections to be made. Fed.R.Civ.P. 45 advisory committee's note, 1991 Amendment. They also require that the subpoena recite the subpoenaed person's rights and duties. Fed.R.Civ.P. 45(a)(1)(D) These changes which provide additional protection to the subpoenaed person also make it reasonable to construe the new time limits more strictly so that failure to timely file an objection will result in a waiver of the right to object to enforcement of the subpoena and of the right to recover costs of production.

If the instant situation were merely one where petitioners had complied with the subpoenas without filing an objection and then submitted a bill of costs, the court would deny the motion because the petitioners would have waived their right to complain about the undue burden of the subpoenas. However, the parties had their own agreement concerning costs. Private agreements save time and expense for the parties and valuable court time as well. Therefore, it is in the interest of justice for this Court to enforce such agreements, under its inherent authority, even though they are not mentioned in Rule 45.

The Court finds that the parties had an explicit oral agreement later confirmed in writing[5] wherein respondent promised to reimburse petitioners for "the reasonable costs of copying documents." The next issue is what did the parties mean by "reasonable costs of copying" and were there any other agreements, such as for attorney's fees.

In construing a private agreement between the parties concerning reimbursement of production costs for compliance with a subpoena, the Court will look to the provisions of Rule 45 in order to aid it in interpreting the contract and defining the terms. The 1991 amendments to Rule 45 now require that the subpoenaed party be protected from significant expenses of production. *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. 232, 265 (D.Del.1992). Nothing else appearing, reasonable copying costs include the services of employees who must select the documents and perform the copying. *Id.; In re Exxon Valdez,* 142 F.R.D. 380, 383 n. 3 (D.D.C.1992). Such costs conceivably could include work performed by attorneys. For example, under the pre–1991 version of Rule 45, wherein protection from significant subpoena expenses was not mandatory, one of the factors used by courts in imposing expenses was the degree to which the production would involve separating privileged or irrelevant material from responsive documents. *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. at 263. Such activity could require the services of an attorney.

The agreement in the instant case did not include attorney fee rates for several reasons. First, the Court finds no specific agreement that the production costs would include attorney's fees. Because such costs are extraordinary, petitioners would have had to provide respondent with clear advance notice that such unusual costs were part of their agreement, just as they are required to do if they had filed an objection to the production. *See In re Letters Rogatory,* 144 F.R.D. 272, 278 (E.D.Pa.1992) (interpreting

---

5. Because the agreement was in writing, it complied with Fed.R.Civ.P. 29 which permits alteration of discovery procedures by written stipulation. Therefore, the Court has no occasion to decide whether Rule 45 is encompassed by Rule 29 or whether private agreements involving Rule 45 must be in writing in order to be enforced.

Rule 45(c)(3)(B)(iii) ). Instead, they only informed respondent that the production would involve a large amount of documents. This is not an adequate notice that the production will involve attorney's fees. Nor did petitioners make any explicit mention of any extensive review by attorneys to separate out privileged documents.[6] Consequently, petitioners cannot recover attorney's fees or production costs at attorney fee rates.

■ The remaining matter before the Court is the calculation of the reasonable costs of production and copying which includes employee time as well as copying charges. In *Standard Chlorine*, the court chose to use the standard 50¢ per copy charge used by the court's clerk's office. That solution works if the production compliance does not involve a large amount of employee time to retrieve and select the documents as opposed to just copying them. *In re Exxon Valdez*, 142 F.R.D. 380, 383 n. 3. Here, the production was truncated by respondent. There were few documents copied but not an insignificant amount of time needed to retrieve and cull the documents. This time is a recoverable cost. *Id.* It was reasonable. Petitioners at first had to conduct a broad expedited search. Only later was the request limited and then terminated.

■ Petitioners seek to recover $182.41 in expenses. However, $123.97 includes Westlaw charges for legal research. The research charges are not recoverable as a cost of production. With respect to employee charges, petitioners have incurred 63.5 hours of attorney's fees. However, a report shows that only 25 of those hours could be directly attributed to reviewing files for documents. Another 15 hours involve reviewing the documents for segregation of attorney-client privilege material. Respondent was not given adequate notice of these latter charges and did not agree to them. *See* n. 4, *supra*. They cannot be recovered. Other hours cover legal research, time expended to prepare the instant motion or oth-

er such hours which may not be reimbursed as a cost of production.

The 25 hours spent in reviewing the files is not, at first blush, unreasonable because petitioners show they had to review twenty feet of document files. However, the Court finds no basis for believing that an attorney was required to collect and review the files and that respondent was notified of this fact and agreed to it. Therefore, petitioners cannot recover at the attorneys' hourly rate of compensation.

■ Petitioners are entitled to the amount of time an employee would have expended in collecting and selecting the documents before copying. This is determined to be 25 hours. Because the job involved collecting documents from several locations, reviewing twenty feet of files, and selecting documents, it is also possible that it was within the parties' contemplation that a paralegal from the law firm would be used. The parties have not addressed this last matter and it cannot be determined without holding a hearing. Because a hearing would be costly for all sides, the Court will adopt the compromise figure of $500.00 as the reasonable cost of copying documents by petitioners. This includes all employee time and copying costs. However, should either side wish to request an evidentiary hearing in order to accurately calculate the exact costs owed to petitioners, they may do so by requesting one within fifteen days from the filing of this Order. Each side shall bear their own costs and expenses as to petitioners' motion.

**IT IS THEREFORE ORDERED** that the motion of petitioners Don G. Angell and Angell Group Incorporated for reimbursement of costs and expenses incurred in complying with subpoenas issued on behalf of this Court by respondent be, and the same hereby is, granted in part and denied in part, and respondent shall pay petitioners the sum of

---

**6.** If petitioners had claimed they were going to separate out privileged documents, they would have had to provide respondent with a "description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim"

as required by Fed.R.Civ.P. 45(d)(2). While petitioners' billing time includes such activity, there is no showing that petitioners provided such a list to respondent. This omission makes it even more likely that attorney's fees were not part of the parties' agreement.

$500.00 for the expenses incurred in complying with said subpoenas.