Carl E. **CHAMBERLAIN,** Plaintiff,

v.

Robert M. **LISHANSKY;** and David L. **Harding; Defendants.**

No. 94–CV–281.

United States District Court, N.D. New York.

July 30, 1997.

J. Scott Porter, Syracuse, NY, for Carl E. Chamberlain.

All, Pappas & Cox, Syracuse, NY, for Lishansky; C. Andrew Pappas, of counsel.

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, NY, for Harding; James A. Resila, of counsel.

## MEMORANDUM-DECISION and ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Carl Chamberlain ("plaintiff" or "Chamberlain"), whose 1989 murder conviction was vacated on a writ of habeas corpus, pursues his § 1983 claim against former police investigators David L. Harding ("Harding") and Robert M. Lishansky, ("Lishansky") who tampered with evidence in the plaintiff's criminal prosecution.

## II. FACTS

This opinion arises from the same factual circumstances as *Chamberlain v. Mantello*, 954 F.Supp. 499 (N.D.N.Y.1997), and assumes familiarity with that opinion, and the Report–Recommendation in *Chamberlain v. Mantello*, No. 95–CV–1050, 1996 WL 521062 (N.D.N.Y. Sept.11, 1996), upon which that opinion was based.

Plaintiff's claim arises from the use of perjured evidence in his conviction for the 1989 hit and run death of Klara Siflis ("Siflis"). In the early morning hours of May 5, 1989, plaintiff's car was stopped on Route 13 in Dryden by Trooper Standinger of the New York State Police. Plaintiff was driving, and the trooper arrested him for driving while intoxicated. Later that morning, a utility crew discovered Siflis' corpse less than two miles from the spot where plaintiff was arrested. After the discovery of the body, plaintiff was charged with Siflis' murder.

To establish that plaintiff's car killed Siflis, and that she was struck intentionally, the prosecution relied on the testimony of State Police Investigators Harding and Lishansky, who were assigned to the Siflis murder investigation after plaintiff's arrest. At trial, Harding testified that he recovered auto body filler ("bondo") from the victim's hair that matched bondo recovered from the plaintiff's car at the police impound facility. Lishansky testified as an expert in accident reconstruction. He claimed to have found pieces of plastic at the scene of the accident that were reconstructed to form the headlight assembly missing from plaintiff's car. Lishansky expressed his professional opinion that the pattern of debris at the accident site indicated that the victim was struck directly from behind, the vehicle that hit her was not braking, and the vehicle may have been accelerating.

No evidence was presented at trial to suggest that Harding or Lishansky knew Chamberlain personally, had dealings with him, or entertained ulterior motives in pursuing their investigation.

To establish that Chamberlain was the driver of the car, the prosecution presented the testimony of George Walker ("Walker")

and Donald Hooper, who were passengers in the car on the night of the accident. They testified that Chamberlain was driving on the morning of May 5, when he passed a woman on a bicycle. They further testified that he then turned the car around in order to pursue her, and he deliberately ran her down with the car. Chamberlain denied guilt, alleging that Walker was driving at the time of the accident, and that he himself took over the driving only after Walker had hit Siflis. On October 13, 1989, Chamberlain was convicted of murder in the second degree, depraved indifference to human life, and leaving the scene of an accident. He was sentenced to 25 years to life.

Chamberlain's conviction was affirmed on appeal to the Appellate Division, Third Department. *People v. Chamberlain,* 178 A.D.2d 783, 578 N.Y.S.2d 270 (3d Dep't 1991). The New York State Court of Appeals denied Chamberlain leave to appeal. 79 N.Y.2d 945, 583 N.Y.S.2d 199, 592 N.E.2d 807 (1992).

Subsequently, new information came to light about the death of Siflis and the prosecution of Chamberlain. Four individuals submitted sworn affidavits asserting that Walker intimated to them that he was the driver of the car that hit Siflis, and he and his friend Hooper had blamed the crime on Chamberlain. Furthermore, investigators Harding and Lishansky had each pled guilty to perjury and evidence tampering in other cases. Harding had admitted to Special Prosecutor Nelson Roth, who was prosecuting evidence tampering in State Police investigations, that he had planted bondo in Siflis' hair, and that Lishansky had manufactured evidence relating to the broken headlight assembly of Chamberlain's car.

Tompkins County Court denied Chamberlain's motion to vacate the conviction pursuant to N.Y.Crim. Proc. Law §§ 440.10 and 440.20, on the grounds that the perjurious testimony only linked the death of Siflis to the car involved, and did not establish the identity of the driver, which a jury had already determined at trial. *People v. Chamberlain,* No. 89–67 (Tompkins Co. Ct., filed October 25, 1993). The Appellate Division, Third Department, denied leave to appeal on December 14, 1993.

In August 1995, Chamberlain filed a habeas corpus petition in this court. The petition was granted, and plaintiff was granted a new trial. 954 F.Supp. 499. The criminal case was remanded to Tompkins County Court. In the remanded proceedings, Chamberlain was sentenced to 5 to 15 years for the crime of reckless manslaughter in the second degree after he entered a guilty plea pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An *Alford* plea allows a defendant to maintain his innocence while acknowledging that the prosecution may be able to obtain a trial conviction which could result in a greater sentence. A defendant entering an *Alford* plea denies committing the crime, but consents to the punishment he receives. In entering his plea, Chamberlain acknowledged that sufficient evidence existed to convict him even if the tampered evidence was excluded.

## III. DISCUSSION

The proceedings in plaintiff's § 1983 action against Harding and Lishansky were stayed until the termination of his habeas corpus petition. Chamberlain now seeks to proceed with this action. Defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56 are before the court. At oral argument held on June 12, 1997 at Utica, New York, Chamberlain discontinued his cause of action based on malicious prosecution, and continues his claim based only on the cause of action for abuse of process against both defendants.

### A. *Summary Judgment*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477

U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356.

## B. *Abuse of Process*

■ Plaintiff's action alleges abuse of process resulting in a violation of his Fourteenth Amendment right to due process. In *Cook v. Sheldon*, 41 F.3d 73 (2d Cir.1994), the court recognized malicious abuse of criminal process as actionable under § 1983, although it relied on state law to supply a definition of the specific elements of such a claim. *Id.* at 80. Under New York law, a claim of malicious abuse of process must include: (1) employing regularly issued legal process to compel performance of or forbearance of some act; (2) with intent to do harm without excuse or justification; (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Id.* (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984)); *Board of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). Assuming *arguendo* that plaintiff has estab-lished an issue of fact relating to the first two elements of abuse of process, defendants have moved for summary judgment on the grounds that plaintiff has submitted no evidence to establish that they entertained a cognizable collateral objective outside the legitimate ends of the process, and therefore his claim for abuse of process must fail as a matter of law.

Collateral objectives typically associated with abuse of process claims were identified by the New York Court of Appeals in *Farmingdale*. The court in *Farmingdale* established that "[w]here process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party." 38 N.Y.2d at 404, 380 N.Y.S.2d 635, 343 N.E.2d 278. Plaintiff concedes that the tampering with evidence by Harding and Lishansky lacked the personal animus that characterizes the pursuit of collateral objectives that the court specifically identified. The only motivations for the tampering that plaintiff proposes are those suggested by Special Prosecutor Roth, i.e., ego gratification, laziness, craving for publicity and advancement, gamesmanship. Plaintiff urges that the satisfaction the rogue investigators derived from tampering with evidence in the Chamberlain investigation constituted a collateral advantage to themselves sufficient to allow the possibility that the pursuit of such advantages provided a collateral objective for the tampering itself.

New York law recognizes that the use of process for the sole purpose of gratifying one's own feelings of importance can constitute a collateral objective, but only where the collateral objective sought is outside the intended purpose of the process. In *Dean v. Kochendorfer*, 237 N.Y. 384, 390, 143 N.E. 229 (1924), Kochendorfer, a magistrate, wanted Dean, an attorney, to appear before him to discuss a disagreement between them regarding courthouse decorum. When Dean refused to appear, Kochendorfer issued a warrant to have Dean charged with disorderly conduct and brought before him. Dean was found guilty, but Kochendorfer first suspended the sentence and then rebuked Dean, claiming that as a magistrate he felt person-

ally affronted that an attorney would quarrel with him about courthouse rules. *Id.* at 387, 143 N.E. 229. The Court of Appeals found that Kochendorfer used the charge of disorderly conduct not to prosecute for disorderly conduct, but to deliver a disciplinary rebuke which is outside the legitimate, intended purpose of the process. *Id.* at 390, 143 N.E. 229. Kochendorfer's motives alone did not constitute abuse of process. The abuse lay in his employing process to satisfy his ego without endeavoring to put the process to its intended purpose. Doing so resulted in an abuse of process that "savors of oppression." *Id.*

Improper motives in using the process do not, without more, constitute a collateral objective, provided the process itself is used for its legitimate purpose. "[T]he falsity of [defendant's] allegations and the defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process." *Butler v. Ratner,* 210 A.D.2d 691, 619 N.Y.S.2d 871 (3d Dep't 1994). "If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." *Hauser v. Bartow,* 273 N.Y. 370, 374, 7 N.E.2d 268 (1937). Abuse, therefore, lies not in the synthesis of proper purpose and suspect motive. Improper motive is only abuse when joined with improper purpose. *Cf. Jennings v. Shuman,* 567 F.2d 1213 (3d Cir.1977).

In the instant case, Harding and Lishansky did not initiate process against Chamberlain, and the objective of their tampering was firmly within the scope of the legitimate, intended use of the process—to convict a hit-and-run drunk driver. Whatever personal satisfaction Harding and Lishansky derived from tampering with the evidence in Chamberlain's prosecution, the objective of the prosecution itself was not outside the legitimate purpose of the process. The pursuit of pleasure or other intangible sensation at the prospect of witnessing a suspect's conviction by the regular workings of the legal system does not constitute a collateral objective germane to a cause of action for abuse of process.

Summary judgment is therefore appropriate as to this claim.

## IV. CONCLUSION

Plaintiff has submitted no evidence to suggest that defendants entertained a cognizable collateral objective in tampering with the evidence in his criminal trial. The law of New York and the Second Circuit does not allow that the use of the criminal process for its intended purpose, albeit with improper motive, constitutes abuse of process. Therefore, no reasonable jury could find in plaintiff's favor, and defendants are entitled to summary judgment as a matter of law.

Chamberlain's grievance seems better suited to a complaint of malicious prosecution. His *Alford* plea to manslaughter, however, where he admitted that sufficient evidence existed to convict him of that crime even without the tampered evidence supplied by Harding and Lishansky, precludes a claim of malicious prosecution since the criminal proceeding underlying his claim cannot be said to have terminated in his favor. *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Accordingly, it is

ORDERED, that

1. Defendants' motions for summary judgment are **GRANTED;** and

2. The Clerk is directed to enter judgment dismissing the complaint in its entirety.