Michael COLEMAN, Plaintiff,

v.

CITY OF NEW YORK, New York City Department of Investigation, Special Investigator Thomas Aristy, Assistant Inspector General Brad Howard, Inspector General Kyle Sturcken, Defendants.

No. 98Civ.8761 (LMM).

United States District Court, S.D. New York.

May 3, 2001.

Michael B. Lumer, Henry L. Saurborn, Saurborn & Mair, P.C., New York City for Michael Coleman.

Rose M. Weber, Elisabeth C. Youngclaus, Michael D. Hess, New York City, for City of New York, New York City Dept. of Investigation, Thomas Arisy, and Brad Howard.

Elisabeth C. Youngclaus, Michael D. Hess, New York City, for John Does 1 and 2.

Rose M. Weber, New York City, for Kyle Raymond Sturcken.

### MEMORANDUM AND ORDER

MCKENNA, District Judge.

Michael Coleman ("Plaintiff" or "Coleman") brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments for federal and state law claims of false arrest, malicious prosecution and malicious abuse of process against the City of New York, New York City Department of Investigation, Special Investigator Thomas Aristy, Assistant Inspector General Brad Howard and Inspector General Kyle Sturcken (collectively "Defendants"). Coleman also brings state law claims of intentional infliction of emotional distress and defamation.[1]

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below Defendants' motion is granted.

### Statement of Facts

Plaintiff was employed as a clerk at the Burial Desk Unit of the New York City Department of Health ("DOH") from February 1995 to May 1998. (Pl.'s Aff. ¶ 2.) In May 1997 the Department of Investigation ("DOI") began an investigation into possible corruption at the Burial Desk Unit of the DOH after receiving two separate complaints that Plaintiff was unlawfully soliciting and accepting money in exchange for processing death certificates and issuing burial permits. (Defs.' Rule 56.1 Statement ¶¶ 37–41) (hereinafter "Defs.' Rule 56.1").

On four separate occasions during the investigation Defendants sent Special Investigator Lacerenza to the Burial Desk Unit to obtain burial permits with death certificate applications to which twenty dollars in United States Currency had been attached. (Defs.' Rule 56.1 ¶ 43, 57.) On September 19, 1997 Lacerenza went undercover to the Burial Desk Unit and handed the clerk a death certificate with twenty dollars in cash attached. (*Id.* ¶ 45.) Lacerenza watched the clerk take the twenty dollars and place it in his pants pocket. (*Id.* ¶ 47.) Subsequently, Lacerenza returned to DOI and gave a physical description of the clerk who accepted the bribe to Defendants Aristy, Howard, and

---

1. Plaintiff has voluntarily withdrawn his state law claims for negligent supervision and tortious interference with business relations set forth in counts six and ten of the complaint. (Pl.'s Sur–Reply Mem. at 1.)

Sturcken, who were the investigators on the case. (*Id.* ¶ 48.) Lacerenza described the clerk as a black man, slender build, between thirty and forty years of age, approximately six feet tall, 150–160 pounds, mustache, wearing a tie with a tie pin that bore the letter "M" on it, standing behind a window with a name plate bearing the name "M. Coleman." (*Id.* ¶¶ 48, 49.) The parties dispute whether Plaintiff's characteristics match the description given by Lacerenza. (*Id.* ¶¶ 53–56.) Plaintiff contends that he does not match Lacerenza's description because he is only five foot eight inches rather than six feet tall. (Pl.'s Mem. at 5.) Additionally, Plaintiff contends that there was another clerk on duty on September 19 named Matthew Moses who is a closer match to the description given by Lacerenza. (*Id.* at 7.) The investigators later discovered that Plaintiff was on duty at the Burial Desk Unit on September 19, 1997 at the time the incident occurred. (Defs.' Rule 56.1 ¶¶ 52.) Plaintiff was not arrested at this time.

Lacerenza went to the Burial Desk Unit on three other occasions offering bribes to the attending clerks, but no other clerks accepted the money. (*Id.* ¶ 57; Lacerenza Dep. at 55–57.)

Subsequently, on February 5, 1998 Aristy and Howard confronted Plaintiff as he left his job and informed him that he must accompany them to the car or he would be arrested ("the February 5 encounter"). (Pl.'s Am. Compl. ¶¶ 16, 17.) At that time Plaintiff was led by the officers and placed in an automobile where he was questioned about the taking of illegal bribes while employed at the Burial Desk Unit. (*Id.* ¶¶ 18, 19.) Coleman was not informed of his Miranda rights at any time during this questioning period. (*Id.* ¶ 20.) Aristy and Howard informed Plaintiff that they had sufficient evidence to arrest him for accepting bribes in exchange for processing permits for death certificates, but that they would not arrest him if he would cooperate with their investigation. (*Id.* ¶ 23.) DOI believed that other employees at DOH were accepting bribes and they wanted Plaintiff to wear a hidden wiretap at work in order provide the investigators with information about Plaintiff's colleagues. (*Id.* ¶ 24.) Plaintiff states that he denied any wrongdoing and refused to act as an informant. (*Id.* ¶ 25.) Aristy and Howard informed Plaintiff that if he did not cooperate with their investigation he would be arrested. (*Id.* ¶ 26.) Plaintiff was released and following this encounter Plaintiff did not contact any of the investigators at DOI. (*Id.* ¶ 29.)

On February 6, 1998 Plaintiff began receiving psychological treatment as a result of the February 5 encounter. (*Id.* ¶ 30.) The psychologist diagnosed Plaintiff with post-traumatic stress syndrome and Plaintiff was granted a medical leave of absence from his job until April 13, 1998. (*Id.* ¶ 31; Pl.'s Mem. at 23–24.)

On April 6, 1998 Investigators Aristy, Howard and Sturcken went to Plaintiff's home expecting that Plaintiff would begin cooperating with their investigation immediately.[2] (Pl.'s Am. Compl. ¶ 32.) However, Plaintiff stated that he was still unwilling to cooperate. (*Id.*) Plaintiff alleges that when he refused to cooperate the investigators told him, "you no longer work for the City" and then they left. (*Id.* ¶ 33.)

---

2. Defendants contend that during the February 5 encounter Plaintiff "admitted to accepting money at least 20 times during his three years at DOH" and Defendants requested

Plaintiff cooperate with their investigation. (Defs.' Rule 56.1 ¶ 62.) Plaintiff maintains that he neither confessed to any wrongdoing or agreed to cooperate.

Subsequently, on April 14, 1998 the day after Plaintiff returned to work, he was arrested by Aristy, Howard and an unidentified male in full view of his co-workers and taken to a local police precinct. (*Id.* ¶ 34–36.) Plaintiff was arraigned in Criminal Court charged with Receiving Unlawful Gratuities in violation of New York Penal Law § 200.35 and was released on his own recognizance. (*Id.* ¶ 38.) After numerous court appearances, on September 14, 1998 Plaintiff's case was dismissed with prejudice. (*Id.* ¶ 41.)

**Summary Judgment**

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When considering the entire record the court must take the evidence in the light most favorable to the non-moving party and draw all positive inferences in that party's favor. *Chamberlain v. Lishansky*, 970 F.Supp. 118 (N.D.N.Y.1997). However, the mere existence of an alleged factual dispute will not defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive summary judgment the non-moving party must set forth facts to show that a genuine issue of material fact exists, such that a reasonable jury could return a verdict for the non-moving party, relying on more than mere conclusory allegations. *Id.* at 248, 106 S.Ct. 2505.

**False Arrest**

 Constitutional claims brought under § 1983 for false arrest are analyzed under state law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). To establish a claim for false arrest a plaintiff must show (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id.* at 853. In the present case, the fourth element is the only element in dispute.

 An arrest is privileged when an officer has sufficient facts to create probable cause. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997). Therefore, a finding of probable cause is a complete defense to a § 1983 claim for false arrest. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). An officer has probable cause to make an arrest when he has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989). To establish probable cause the Court should consider the "totality of the circumstances" at the time the arrest was made. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Even if the evidence upon which the arrest was made is circumstantial, "circumstantial evidence and inferences therefrom can suffice to support a finding of probable cause." *United States v. An Original Manuscript Dated November 19, 1778*, 96 Civ. 6221, 1999 WL 97894, at *5, 1999 U.S. Dist. LEXIS 1859, at *16 (S.D.N.Y. Feb. 19, 1999) (quoting *United States v. Four Million Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 904 (11th Cir.1985)).

Plaintiff claims that Defendants lacked probable cause to seize him on February 5 in order to conduct an interrogation and to arrest him on April 14 for allegedly accepting an illegal gratuity. (Pl.'s Mem. at 4.) Plaintiff contends that based on the de-

scription provided by Lacerenza, Defendants did not have probable cause because the identification was not sufficiently specific and the investigators did not subsequently seek any confirmatory identification. (*Id.* at 5.)

At the time of the arrest Defendants had the following information. In May 1997, DOI received two separate complaints that Plaintiff had solicited and accepted illegal bribes while working at the Burial Desk Unit. It was these two complaints that sparked the investigation of possible corruption at the DOH. Based on these complaints Defendants initiated an undercover operation sending an undercover investigator to the Burial Desk Unit with authentic death certificates and offering the clerks on duty bribes to process the certificates. Out of four attempts, on only one occasion did a clerk accept a bribe. On September 19, 1997 Lacerenza went to the Burial Desk Unit between two and four in the afternoon with twenty dollars attached to an authentic death certificate and handed it to the clerk at the window. He watched as the clerk took the twenty dollars and placed it in his pants pocket. After the incident Lacerenza returned to DOI and gave a physical description of the clerk who had accepted the bribe. He described the clerk as a black man with a mustache, about six feet tall, slender, approximately 150–160 pounds, wearing a tie pin with the letter "M" on it, standing behind a window with a name plate bearing the name "M. Coleman." Subsequently, DOI received information

that Coleman was in fact on duty on September 19, 1997 between two and four.

Plaintiff argues that Lacerenza's description is "sharply at odds" with his actual appearance because he is in fact five foot eight inches rather than six feet tall. (Pl.'s Mem. at 5.) Additionally, Plaintiff states that Lacerenza left out important identifying details such as hair length and style, whether or not the clerk was wearing glasses and whether or not the clerk had any distinguishing features. Further, Plaintiff argues that Defendants had ample opportunities to confirm Lacerenza's identification by placing Plaintiff in a line up or by showing Lacerenza Plaintiff's picture for identification. (Pl.'s Mem. at 6.) However, such confirmation was never attained.

Applying the state law false arrest standards set forth above the Court finds that the investigators acted reasonably and in good faith relying on the information they had at the time of the arrest including, (1) the initial complaints, (2) Lacerenza's observations and description which closely matched that of Plaintiff,[3] and (3) the fact that Plaintiff was on duty at the Burial Desk Unit on that day, at that time. Under these circumstances, the investigators did in fact have probable cause to arrest Coleman on April 14, 1998. Because Defendants had probable cause to arrest Coleman, Defendants' motion for summary judgment as to Plaintiff's claim for false arrest is granted.

**Malicious Prosecution[4]**

A claim for malicious prosecution is also reviewed under state law.

---

**3.** According to Plaintiff the only discrepancy between Lacerenza's description and Plaintiff's characteristics is that Plaintiff is five foot eight inches rather than six feet tall. (Pl.'s Mem. at 5.) A slight discrepancy of a few inches in height when all other characteristics match is not a compelling distinction.

**4.** In his complaint Plaintiff also makes a claim for malicious use of process. (Pl.'s Am. Compl. ¶¶ 69–72.) However, malicious use of process is the same as malicious prosecution and occurs when a prosecution or another legal process is initiated against a person without probable cause. *Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir.1977).

*Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994). To establish a claim for malicious prosecution Plaintiff must show (1) that Defendants started a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Lowth v. Town of .Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996). The only issues in dispute address elements three and four, probable cause and malice.

■■■■ Under New York law, even if there was probable cause to arrest an individual, that does not necessarily mean there is probable cause to prosecute him. *Cox v. County of Suffolk,* 780 F.Supp. 103, 108 (E.D.N.Y.1991). If subsequent to an individual's arrest, new facts were to arise which made it apparent to investigators that the charges against the individual were groundless, probable cause would no longer exist. *Callan v. State,* 134 A.D.2d 882, 521 N.Y.S.2d 923, 924 (1987). Thus, the Court must evaluate whether Defendants had probable cause to prosecute at the time the prosecution was initiated. *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998).

■■■ Plaintiff states that "Sturcken learned some time after the commencement of the prosecution that Lacerenza had told prosecutors that he would not be able to identify Mr. Coleman as the guilty clerk." (Pl.'s Mem. at 11.) However, as Plaintiff states, this event took place after the prosecution was initiated, not before. Therefore, when Defendants initiated the prosecution the decision was based on the same information upon which Plaintiff was arrested. Because no new facts came to light after the arrest and before the prosecution was initiated that would exonerate Plaintiff, Defendants had probable cause to initiate the prosecution against him.[5] *See Callan,* 521 N.Y.S.2d at 924. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution is granted.[6]

## Malicious Abuse of Process

■■■ Although malicious prosecution and malicious abuse of process entail a similar analysis, malicious prosecution is the improper issuance of process, whereas malicious abuse of process is improper use of process after it has been legally issued. *Cook,* 41 F.3d at 80. Malicious abuse of process is actionable as a federal claim under § 1983 as well as a state common law claim. *Id.* at 79.

■■■ To establish a claim for malicious abuse of process under § 1983, Courts are guided by state law. *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994). Plaintiff must show the following elements

---

**5.** Even if Plaintiff made a claim for malicious prosecution for the time period after prosecution began, probable cause existing at the time of arrest and at the time prosecution is initially brought does not dissipate unless the investigators "had knowledge of some intervening fact exonerating plaintiff." *Brown v. City of New York,* 60 N.Y.2d 893, 894, 470 N.Y.S.2d 571, 458 N.E.2d 1248 (1983) (quoting *Feinberg v. Saks & Co.,* 56 N.Y.2d 206, 211, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982)). Although the fact that Lacerenza could no longer positively identify Coleman certainly made Defendants' case weaker, this new fact did not exonerate Plaintiff. Based on the original complaints received by DOI and Lacerenza's description of the clerk who took the bribe, it remained a question for the jury to decide whether Defendants presented enough evidence to convict Plaintiff of the offense charged. However, at no point did Defendants' case become futile.

**6.** Because the Court finds that Defendants had probable cause to prosecute Plaintiff the Court does not need to reach the question of malice.

(1) regularly issued process compelling the performance or forbearance of some prescribed act, (2) the person activating the process must have been motivated to do harm without economic or social excuse or justification, and (3) the person activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process. *Id.*

Plaintiff argues that Defendants commenced and continued their prosecution against him as retaliation for his failure to cooperate with their investigation into corruption at the Burial Desk Unit. (Pl.'s Mem. at 14.) Plaintiff claims that the prosecution was illegally continued by Defendants when they made misleading statements to the prosecutors in order to keep the prosecution going even though they knew the eyewitness could no longer positively identify Coleman as the clerk who accepted the bribe. (*Id.*) Plaintiff argues that arresting and prosecuting him out of retaliation because he would not cooperate with Defendants' investigation is an illegitimate collateral objective. (Pl.'s Mem. at 14.)

■■■ Refusal to cooperate with investigators is not constitutionally protected activity and therefore, arresting and prosecuting an individual for a crime after they refuse to cooperate does not constitute an illegitimate collateral objective. *United States v. Ross*, 719 F.2d 615, 620 (2d Cir. 1983). "Where there is probable cause for believing a defendant has committed a crime, his prosecution is not constitutionally barred because the prosecutor's selection of his, out of many other possible crimes to pursue, was precipitated by defendant's failure to cooperate with law enforcement officials." *Id.*

Because Defendants' decision to arrest and prosecute Plaintiff after he refused to cooperate is not an illegitimate collateral objective, Plaintiff has no claim for malicious abuse of process. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim for malicious abuse of prosecution is granted.

**State Law Claims**

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's New York common law claims under 28 U.S.C. § 1367(c)(3).

**Conclusion**

For the reasons stated above the Court grants Defendants' motion for summary judgment dismissing Plaintiff's federal causes of action and declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's complaint is hereby dismissed in its entirety. The Clerk is instructed to enter judgment dismissing this case.

SO ORDERED.