**Michael T. REILLY, Plaintiff,**

v.

**NATWEST MARKETS GROUP, INC. and National Westminster Bank, Defendants.**

**No. 00 CIV 3234 JES.**

United States District Court, S.D. New York.

Dec. 28, 2001.

Michael T. Reilly, Far Hills, NJ, Plaintiff Pro Se.

Cravath, Swaine & Moore, New York City, Douglas D. Broadwater, Gregory E. Birkenstock, of counsel, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff *pro se* Michael T. Reilly ("plaintiff") brings this action against defendants Natwest Markets Group, Inc. and National Westminster Bank (collectively "defendants"), claiming relief on several grounds, all of which relate to defendants' conduct during the various phases of *Reilly v. Natwest Mkts. Group*, 96 Civ. 0641 ("*Reilly I*"). Plaintiff seeks relief pursuant to (1) New York Labor Law §§ 195, 215; (2) 42 U.S.C. §§ 1985, 1986; and (3) common law tort claims under New York law. Defendants move to dismiss plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. Proc. 12(b)(6) and seek sanctions pursuant to Fed. R. Civ. Proc. 11 and 28 U.S.C. § 1927 (2001). For the reasons set forth below, the Court grants defendants' motion to dismiss plaintiff's Amended Complaint and denies defendants' motion for sanctions.

## BACKGROUND

In *Reilly I*, plaintiff alleged that defendants terminated his employment contract without cause and sought damages for (1) breach of contract; (2) quantum meruit; (3) violation of N.Y. Labor Law; and (4) defamation. *Reilly I* was bifurcated to resolve the issue of liability first and then damages. After a jury found that defendants willfully terminated plaintiff without cause, the court impaneled another jury to determine the issue of plaintiff's damages.

During the damage phase pre-trial period, plaintiff requested from defendants certain documents that were highly relevant to plaintiff's quantum meruit claim. Specifically, plaintiff requested access to files documenting the various transactions he had worked on while employed by defendants ("the Deal Files") so that he could prove the reasonable value of his goods and services to defendants. Plaintiff served defendants with a request for production of the Deal Files on September 8, 1997. *See* Pl.'s Req. for Damages–Phase Prod. of Docs. ("Pl.'s Damages–Phase Doc. Req.") at Rider A. Prior to this specific request, however, plaintiff had requested generally all documents concerning (1) completed transactions that he was involved with during 1994 and 1995; (2) pending transactions at the time of his termination in August 1995; and (3) transactions he maintained a role in between August 1995 and January 1996. *See* Pl.'s First Req. for Prod. of Docs. ("Pl.'s First Doc. Req.") at Rider A.

At no time during the damage phase pre-trial period did plaintiff receive any of these requested documents. On November 26, 1997, plaintiff informed defendants that all of the documents they had theretofore produced contained files pertaining to employees other than plaintiff and requested that his Deal Files be produced on or before his February 10, 1998 deposition. *See* Order re: Sanctions Mot. dated June 25, 1998 ("Reilly I Sanctions") at 2. On April 3, 1998, after several pre-trial conferences, this Court ordered defendants to "produce all documents responsive to plaintiff's document request." Order re: Doc. Req. ("Doc.Req.Order") at 2.

Following the Court's order, between April 3, 1998 and May 7, 1998, defendants maintained that they had submitted all documents in their possession. *See* Reilly I Sanctions at 3. During that same period, plaintiff continued to request the production of the Deal Files and threatened to ask this Court for an adverse inference instruction if defendants did not comply.

*See id.* at 3. On May 5, 1998, plaintiff's counsel moved for an adverse inference instruction to the jury, referring to defendants failure to produce material evidence. *See* Pl.'s Mem. on Preclusion Issues dated May 3, 1998 ("Pl.'s Preclusion Mem.") at 7–10.

At the final pre-trial conference on Friday, May 8, 1998, Judge Conti—to whom the case had been transferred—was informed that defendants had told plaintiff's attorney just the day before that seven (7) linear feet of plaintiff's Deal Files had been located on the very same floor that plaintiff had worked; trial was set to begin in this Court on Monday, May 11, 1998. After hearing from both parties, Judge Conti stated that defendants' untimely production of documents was "unconscionable." Hr'g Tr. dated May 5, 1998 at 10. Judge Conti then granted plaintiff's Rule 37 request for discovery sanctions in the form of an adverse inference instruction to the jury and a preclusion order preventing defendants' from using the Deal Files or referring to plaintiff's deposition at trial.[1] *See* Reilly I Sanctions at 4. After an eight-day trial, plaintiff received a jury verdict of over $7 million.

During the post-trial phase, plaintiff moved Judge Conti to consider imposing additional sanctions in response to defendants' discovery behavior, including a default judgment in the amount of $13.5 million.[2] Plaintiff claimed that the pre-trial discovery sanctions were inadequate because they were given before plaintiff had a chance to determine whether the Deal Files were complete. Indeed, according to

plaintiff, the trial had shown that the Deal Files were incomplete and "sanitized" insofar as they only contained public documents and a limited number of plaintiff's notes and papers. *See* Reilly I Sanctions at 5. Judge Conti instructed plaintiff that to justify further sanctions he would have "to establish what damages he sustained or to what extent the presentation of his case was hindered by [defendants'] actions in violation of court orders regarding discovery." Order re: Post–Trial Issues dated June 3, 1998 ("Post–Trial Order") at 5.

Following briefing by both parties and a hearing on June 9, 1998, Judge Conti found that, although defendants were grossly negligent in their search for the Deal Files and their failure to properly preserve plaintiff's Deal Files went beyond mere negligence, plaintiff had not proven by a preponderance of the evidence that defendants' conduct was willful. *Id.* at 7–8. Judge Conti further held that because of the adverse inference instruction, "plaintiff was not significantly prejudiced in the presentation of his case." *Id.* at 9.

In the fall of 1998, after the post-trial issues were resolved, both plaintiff and defendants appealed to the United States Court of Appeals for the Second Circuit ("the Second Circuit"). On June 17, 1999, the Second Circuit held that Judge Conti did not abuse his discretion and that the adverse inference instruction adequately redressed defendants' gross negligence. *See Reilly v. Natwest Mkts. Group, Inc.,* 181 F.3d 253, 271 (2d Cir.1999). The Second Circuit also concluded that defendants

---

1. At the conclusion of trial, Judge Conti instructed the jurors that, "If you find that [defendants'] explanation as to why they did not deliver these files was not reasonable, and if you find that plaintiff has proved by a preponderance of the evidence that the non-delivery hindered [plaintiff] in the preparation of his damages claims, then you may take that

fact into consideration in assessing [plaintiff's] ability to present his case." Trial Transcript dated May 20, 1998 ("Trial Tr.") at 1267.

2. Judge Conti had previously denied a similar request for default judgment brought by plaintiff prior to the commencement of trial.

were barred from contesting the amount of contract damages—although it was greater than the contractual maximum—because defendants chose not to challenge the point on appeal. *See id.* at 264. Finally, the Second Circuit reversed the award of quantum meruit damages, holding that because plaintiff never rescinded his express contract, he was not entitled to recovery. *See id.* at 262–65. Plaintiff was left, therefore, with $2.054 million in contract damages, $1.054 million in damages for defendants' willful refusal to pay plaintiff in violation of N.Y. Labor Law, and an additional $263,500 in liquidated damages pursuant to N.Y. Labor Law. *See id.* at 263–64. In affirming in part, vacating in part, and remanding in part, the Second Circuit found that the only remaining issues were the amount of pre-judgment interest plaintiff was entitled to on his contract damages and the amount of attorney's fees plaintiff was entitled to under N.Y. Labor Law § 198(1–a). *Id.* at 271–72.

On November 28, 1999, following the Second Circuit's decision, plaintiff moved Judge Conti pursuant to Rule 60(b) to reconsider his prior order denying additional post-trial sanctions. Plaintiff claimed that the $5.5 million quantum meruit award was part and parcel of Judge Conti's decision and that the "force and effect" of the pre-trial sanction had been nullified by the Second Circuit's decision to vacate the quantum meruit award. *See* Pl.'s Rule 60(b) Mot. dated Sept. 29, 1999 ("Mot. to Reconsider Sanctions") at 11. After conducting another hearing on the matter, Judge Conti denied plaintiff's motion for relief, finding that "a thorough review of the record has convinced this Court of the appropriateness of its prior rulings." Order re: Plaintiff's Rule 60(b) Mot. dated Oct. 18, 1999 ("Rule 60(b) Order") at 1–2.

Following determination of the remanded issues, a Second Amended Judgment was entered on February 9, 2000 for an amount totaling $3.531,519.80. *See* Order re Second Am. J. ("Second Am. J.") at 2. During the subsequent six (6) months, the parties disputed the form, amount, and procedure for satisfying the judgment. Most significantly, plaintiff contends that the judgment was intentionally overstated by $2.000 for disingenuous reasons and the defendants never sought to correct it, and that defendants contacted one of plaintiff's former attorneys to induce plaintiff to accept the improper judgment. *See* Pl.'s Am. Compl. dated June 21, 2000 ("Reilly II Compl.") at ¶ 10. Defendants maintain to the contrary that the overstated judgment was a typographical error that they were willing to correct and that contacting plaintiff's former attorney was necessary because plaintiff had a lien on the judgment that they were attempting to pay. *See* Defendants' Letter to Plaintiff dated Feb. 17, 2000 ("Letter from Defendants"); Defs.' Mot. to Dismiss dated July 21, 2000 ("Mot. to Dismiss") at 12. Defendants deposited the requisite amount with the Court and the judgment was satisfied on August 29, 2000.

The instant action, which was filed on April 27, 2000 during the post-remand phase of *Reilly I*, involves plaintiff's prior allegations that defendants engaged in litigation misconduct in the course of *Reilly I*. In this, his second action, plaintiff claims defendants: (1) owe him additional wages pursuant to N.Y. Labor Law § 198(1–a); (2) retaliated against him in violation of N.Y. Labor Law § 215; (3) failed to maintain records as required by N.Y. Labor Law § 195; (4) conspired to injure and prevent his testimony in a federal court proceeding pursuant to 42 U.S.C. § 1985(2); (5) were negligent in their attempt to prevent a conspiracy under 42 U.S.C. § 1986; (6) committed a *prima fa-*

*cie* tort; (7) intentionally and/or negligently impaired his right to sue a third party; (8) committed abuse of process; and (9) tortiously interfered with the contract between plaintiff and his attorney and/or plaintiff's attorney-client relationship, all in violation of New York law.[3]

## DISCUSSION

In considering a motion to dismiss brought pursuant to Fed. R. Civ. Proc. 12(b)(6), the Court must examine the complaint liberally, and draw all reasonable inferences in favor of the non-moving party. *See; Kalnit v. Eichler,* 264 F.3d 131, 138–39 (2d Cir.2001); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991). A claim should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cortec Indus., Inc.,* 949 F.2d at 47. (internal quotes omitted). Thus, the Court must consider the factual allegations in the complaint as true and grant the motion to dismiss only if the moving party is entitled to relief as a matter of law. *See id.* Employing this liberal standard, plaintiff alleges no set of facts that can survive defendants' motion to dismiss.

Under New York law, the doctrine of *res judicata* "gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action . . .

from subsequently relitigating any questions that were necessarily decided therein." *Ferris v. Cuevas,* 118 F.3d 122, 126 (2d Cir.1997) (internal quotes omitted). *Res judicata* "preclude[s] the litigation of matters that could have or should have been raised in a prior proceeding arising from the same factual grouping, transaction, or series of transactions." *Board of Managers of Windridge Condos. One v. Horn,* 234 A.D.2d 249, 651 N.Y.S.2d 326, 327 (N.Y.App.Div.1996) (internal quotes omitted); *see also Bank of India v. Trendi Sportswear, Inc.,* 239 F.3d 428, 439 (2d Cir.2000) (quoting *Manhattan Eye Ear & Throat Hosp. v. NLRB,* 942 F.2d 151, 155–156 (2d Cir.1991) ("[U]pon a final judgment on the merits, parties to a suit are barred . . . as to any . . . matter that the parties had a full and fair opportunity to [litigate].")); *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 (1981) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.").

█ In this case, after reviewing the record the Court finds that the doctrine of *res judicata* precludes plaintiff from asserting claims against defendants regarding defendants' discovery behavior in *Reilly I.*[4] Any and all claims plaintiff now

---

**3.** On October 9, 2001, plaintiff, *without leave of Court,* filed a motion pursuant to Rule 12(d), requesting that the Court deny defendants' 12(b)(6) motion with prejudice or, alternatively, hold a preliminary hearing on defendants' 12(b)(6) defenses not so denied. Because the Court's instant Opinion fully addresses the substance of defendants' motion, and because the Court, in its discretion, sees no need for a further hearing on the matter, plaintiff's motion pursuant to 12(d) shall be and is hereby denied.

**4.** No appellate court has addressed the issue of whether Rule 37 sanctions of the type ordered by Judge Conti have *res judicata* effect on subsequent litigation involving the same underlying misconduct. Two appellate courts have considered the issue in the Rule 11 context and have held that Rule 11 sanctions do not preclude the bringing of such a subsequent action. *See Cohen v. Lupo,* 927 F.2d 363, 365 (8th Cir.1991); *Amwest Mortgage Corp. v. Grady,* 925 F.2d 1162, 1164–1165 (9th Cir.1991). As discussed below, however,

seeks to assert against defendants regarding their untimely and prejudicial production of documents were fully litigated in the original proceeding. Indeed, contrary to plaintiff's assertion that he has not been sufficiently heard with respect to defendants' sanitization of the Deal Files, Judge Conti, a jury, and the Second Circuit all have made findings on this specific issue. Judge Conti granted plaintiff extensive relief in the form of an adverse inference instruction against defendants and preclusion orders prohibiting defendants' from using the Deal Files or plaintiff's deposition at trial.[5] Furthermore, although Judge Conti denied plaintiff's post-trial motion to impose additional sanctions-a decision that was subsequently affirmed by the Second Circuit-as well as plaintiff's motion to reconsider the court's denial of a default judgment, he did so only after directing the parties to fully brief the issues and holding hearings on the matters.

Accordingly, as discussed below, the Court finds that plaintiff's first and third causes of action are barred in full on the basis of *res judicata*. Plaintiff's second claim and claims four through nine are dismissed in part on the basis of *res judi-* *cata* and in part due to defendants' failure to state a claim for which relief can be granted.

## I. New York Labor Law Claims

According to N.Y. Labor Law § 198(1–a)

> In any action instituted upon a wage claim by an employee ... the court shall allow ... upon a finding that the employer's failure to pay the wage .. was willful, an additional amount as liquidated damages equal to twenty-five percent of the total wages found to be due.

N.Y. Labor Law § 198(1–a) (2001). In *Reilly I*, plaintiff asserted a § 198(1–a) wage claim and the jury found that, of the $2.054 million in contract damages, defendants willfully withheld $1.054 million. *See Reilly*, 181 F.3d at 265. Judge Conti accordingly awarded plaintiff an additional $263,500 in liquidated damages. *See id.* at 262. Although the $2.054 million award, when added to the $1.4 million defendants actually paid plaintiff prior to the litigation, fixes plaintiff's total compensation for 1994 and 1995 at more than that provided for by the unambiguous terms of plaintiff's

these cases are distinguishable from the case at bar.

As an initial matter, both *Cohen* and *Amwest* involved a subsequent action alleging malicious prosecution, which raised issues of malice and intent over and above those which are required for the imposition of Rule 11 sanctions, and which may also justify the imposition of additional damages not properly recoverable under Rule 11. Furthermore, unlike the parties in *Cohen* and *Amwest*, plaintiff in this case was given a full and fair opportunity to litigate the effect of defendants' discovery misconduct; indeed, Judge Conti responded to plaintiff's arguments by issuing an adverse inference instruction to the jury and by precluding the use of evidence flowing from such misconduct.

5. Plaintiff and his attorney were indeed able to capitalize on such relief. On re-direct ex-

amination, plaintiff stated: "All those files were left behind. They were moved from one place on the floor to another place on the floor. They were quote, lost, unquote. And the Friday before we begin trial, they magically appear." *See* Trial Tr. dated May 15, 1998 at 771. At his summation, plaintiff's counsel argued that, "The day before trial began, a whole bunch of files were produced. Only two of them were complete. The others were missing, and what they were missing was precisely the information that would relate Mr. Reilly to the transactions, his memos, [and] his presentations. All that was left in these files was annual reports and things like that. The evidence, I think, shows that the additional information that was in these files would corroborate Mr. Reilly's account here." *See* Trial Tr. dated May 20, 1998 at 1322.

employment contract, defendants did not appeal the amount of contract damages awarded. Defendants did, however, challenge the amount of liquidated damages awarded pursuant to section 198(1–a), claiming that plaintiff's percentage bonus should be classified as "incentives," not "wages." *See id.* at 264–65. On appeal, the Second Circuit rejected defendants' attempt to reduce its liquidated damages, and thus, the amount plaintiff was entitled to under his § 198(1–a) claim was not remanded. *See id.* at 264–65, 271. As noted above, the only issues remanded were: (1) the amount of prejudgment interest; and (2) the amount of attorney's fees. *See id.* at 271.

■ Plaintiff now contends that defendants' failure on appeal to challenge the contract award as greater than the contractual limit somehow provides him with another § 198(1–a) cause of action. This is simply erroneous as plaintiff's claim was previously litigated in this Court and defendants choice not to focus on plaintiff's contract claim on appeal (defendants' so-called "Appellate Phase Waiver") does not provide sufficient grounds to permit plaintiff to relitigate that claim now. Therefore, because the Second Circuit's affirmance and entry of judgment on the contract award constitutes a final resolution of plaintiff's contract and Labor Law claims, plaintiff's claim under N.Y. Labor Law § 198(1–a) is barred by *res judicata.*

■ Plaintiff next contends that defendants' "purposeful and/or collective conduct and actions during the Damage Phase Pre–Trial Period and/or the Post–Remand Phase [represented] a 'continuing retaliatory action'" under N.Y. Labor Law § 215(1) for which a civil action lies under N.Y. Labor Law § 215(2).[6] Reilly II Compl. at ¶ 17. New York Labor Law § 215 applies to retaliatory actions taken by "an employer ... against an employee." *See* N.Y. Labor Law § 215(1) (2001). An employee must bring such a claim within two (2) years of the alleged retaliatory conduct. *See* N.Y. Labor Law §§ 215(1), (2). Although plaintiff in this case brought his claim within two (2) years of defendants' alleged misconduct, he had ceased being an employee of defendant corporations more than two (2) years prior thereto.[7] Therefore, in addition to the portion of plaintiff's claim involving damage-phase activity, which is barred by *res judicata,* plaintiff fails to state a claim for retaliatory conduct under N.Y. Labor Law § 215.

Plaintiff also alleges that "defendant's failure to maintain and/or intentional destruction of the Deal Files" violated N.Y. Labor Law § 195, Reilly's Am. Compl. at ¶¶ 18–20. As discussed above, because the substance of plaintiff's third claim was fully litigated in the course of *Reilly I,* it is dismissed as barred by *res judicata.*

## II. Civil Rights Claims

■ Plaintiff further claims that defendants violated 42 U.S.C. § 1985(2) by "conspir[ing] ... to injure [him] in his person

---

6. According to plaintiff, the "Damage Phase Pre–Trial Period" ran from February to May 1998; the subsequent "Post–Remand Phase" began in February 2000 and continued through the date the Amended Complaint was filed on June 21, 2000. *See* Reilly's Am. Compl. at ¶ 6e.

7. Plaintiff alleges that the date at which he was no longer an employee is an issue of fact. Viewing the evidence in his favor, the Court still finds his claim insufficient. Even were plaintiff still employed by defendants on January 29, 1996, the alleged retaliatory conduct took place between February and July 2000, well more than two years later. *See Reilly,* 181 F.3d at 259 ("In August 1995, [defendants] fired [plaintiff]. Despite his termination, he continued to work as a consultant for the rest of the year.")

or his property for having previously testified in federal court proceedings." Reilly's Am. Compl. at ¶ 23. Plaintiff's claim is based on various actions that allegedly took place during the damages and post-remand phase. To the extent plaintiff's allegations focus on actions by defendants during the damages phase, particularly those pertaining to defendants' handling of the Deal Files, they are barred by *res judicata.* The remaining allegations require further analysis.

■ To state a claim for relief under 42 U.S.C. § 1985(2), an intimidated witness must allege: (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff. *See Chahal v. Paine Webber Inc.,* 725 F.2d 20, 23 (2d Cir.1984). Resolving all reasonable inferences in plaintiff's favor, as the Court must, plaintiff's post-remand phase allegations fail to state a claim under § 1985(2). Specifically, plaintiff fails to adequately plead any injury resulting from defendants' allegedly retaliatory conduct. Plaintiff would have the

Court believe that he has been injured within the meaning of § 1985(2) by an improper judgment form, an intentionally overstated judgment, an attempt to prevent him from bringing this litigation in return for judgment satisfaction, and defendants' effort to contact one of plaintiff's former attorneys to induce plaintiff to accept payment. Despite this alleged egregious conduct, plaintiff received a judgment in the amount of approximately $3.5 million and was nonetheless able to bring the instant lawsuit. *See* Reservation of Interests Prior to Satisfaction of Judgment dated August 29, 2000. The Court finds that these harms do not constitute an injury to plaintiff as defined by § 1985(2). Accordingly, plaintiff's § 1985(2) claim is dismissed in part based on *res judicata* and in part on his failure to state a claim.[8]

■ Plaintiff's final civil rights claim is that defendants moved the Court to enter an intentionally overstated judgment to "injure [plaintiff] in his person and/or his property" in violation of 42 U.S.C. § 1986. Reilly's Am. Compl. at ¶ 31. Section 1986 provides a cause of action against "anyone who having knowledge that any of the

---

8. Plaintiff cites *Haddle v. Garrison,* 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998), and *Morris v. Lindau,* 196 F.3d 102 (2d Cir. 1999), for the proposition that his allegations with respect to injury are at least sufficient to create an issue of fact, thereby preventing dismissal of his claim. In *Haddle,* plaintiff alleged that defendants conspired to have plaintiff terminated from his job in retaliation for obeying a federal grand jury subpoena and to prevent plaintiff's testimony in a subsequent trial. *See Haddle,* 525 U.S. at 122, 119 S.Ct. 489. The relevant issue in that case was whether the type of injury alleged-namely, the loss of at-will employment-was within the reach of § 1985(2). The Supreme Court concluded that the alleged injury was within the statute's reach, relying on the fact that such an injury has long been compensable under tort law. In *Morris,* which involved a summary judgment motion, the Second Circuit

was not concerned with the type of injury alleged; rather, it remanded the case to determine whether the plaintiff in fact had been harmed because the record was unclear. *See* 196 F.3d at 116–117. Both cases are easily distinguishable.

First, the procedural posture of the Second Circuit's decision in *Morris* renders it inapposite to the instant case. Indeed, the Court here is considering a motion to dismiss, which, unlike a motion for summary judgment, requires the Court to assume the truth of all the facts asserted by the non-moving party. Furthermore, although the issue here more closely resembles that in *Haddle—i.e.,* whether the nature of the allegedly injurious conduct is contemplated by § 1985(2)—that case is not helpful to plaintiff because plaintiff's alleged injuries are not, like the loss of employment involved in *Haddle,* of a type traditionally recognized as compensable.

wrongs conspired to be done and mentioned in [§] 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993) (internal quotes omitted). A § 1986 claim, therefore, must be predicated upon a valid § 1985 claim, *see B & M Serv. Station v. City of Norwich*, No. 3: 93–CV–1782, 2000 WL 305981, *8 (D.Conn. Feb. 25, 2000) (citing *Mian*, 7 F.3d at 1088), which, as discussed above, plaintiff's § 1985 claim is not. Accordingly, plaintiff's § 1986 claim is dismissed.

### III. Tort Law Claims

■ Plaintiff's first tort claim asserts that conduct during the "Damages Pre–Trial Phase, Appellate Phase, Remand Phase and/or Post–Remand Phase which, while permitted under law, was done for the purpose of malevolently harming Plaintiff." *See* Plaintiff's Am. Compl. ¶ 31. Under New York law, to sustain a claim for *prima facie* tort, a plaintiff must plead "special damages" with "sufficient specificity." *Pappas v. Passias*, 271 A.D.2d 420, 707 N.Y.S.2d 178, 180 (N.Y.App.Div.2000) (citing *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349 (1985)). In this case, to the extent plaintiff's claims are not barred by *res judicata*, plaintiff's blanket and general assertions regarding his suffered harm fail to meet the required pleading standard; "[b]road and conclusory terms are simply insufficient to fulfill this critical element of the allegations necessary to sustain a cause of action to recover for *prima facie* tort." *Constant v. Hallmark Cards*, 172 A.D.2d 641, 568 N.Y.S.2d 441, 442 (N.Y.App.Div.1991). Accordingly, plaintiff's *prima facie* tort claim is dismissed.

■ Plaintiff next alleges that defendants' actions during the damage phase and post-remand phase intentionally or negligently impaired plaintiff's right to sue either of the instant defendants. *See* Reilly's Am. Compl. ¶¶ 32–33. New York law allows an employee to maintain a common-law action against his or her employer if the employer's actions have impaired the employee's right to recover damages from a third party tortfeasor. *See Curran v. Auto Lab Serv. Ctr., Inc.*, 280 A.D.2d 636, 721 N.Y.S.2d 662, 664 (N.Y.App.Div.2001). For several reasons, however, the instant plaintiff's claim must be dismissed. As an initial matter, similar to the claims already discussed, plaintiff's allegations pertaining to discovery abuses during the damage phase pretrial period are barred by *res judicata*. Regarding the post-remand phase allegations, the most significant flaw in plaintiff's theory is that at the relevant time he had not been an employee of defendants for over four (4) years; indeed, those New York cases recognizing such a cause of action against one's employer have done so only where the complainant was actually employed by the defendant at the time of the alleged impairment. *See, e.g., Curran*, 721 N.Y.S.2d at 663–64; *Coley v. Arnot Ogden Mem. Hosp.*, 107 A.D.2d 67, 485 N.Y.S.2d 876, 877–79 (N.Y.App.Div.1985). Furthermore, plaintiff fails to allege any facts from which the Court can infer that defendants' post-remand conduct impaired plaintiff's right to sue a third-party tortfeasor. *See* Reilly's Am. Compl. ¶ 10. As noted above, none of defendants' allegedly improper post-remand actions impaired plaintiff's right or ability to bring the instant action. Plaintiff's claim is, therefore, dismissed.

■ According to plaintiff, defendants' damage and post-remand phase conduct also constituted an abuse of process under New York law. *See* Reilly's Am. Compl. ¶¶ 36–39. In New York, a claim of abuse of process lies where a defendant employs regularly issued process to com-

pel performance or forbearance of some act with the intent to harm and obtain a collateral objective that is outside the legitimate ends of the process. *See Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). Furthermore, to survive a motion to dismiss, a claimant must allege that defendant's abuse of process involved some "unlawful interference with [his] person or property," *Walentas v. Johnes*, 257 A.D.2d 352, 683 N.Y.S.2d 56, 58 (N.Y.App.Div. 1999) (internal quotes omitted), and that he suffered actual or special damages. *See Board of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assoc.*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 644, 343 N.E.2d 278 (1975). In this case, plaintiff's complaint contains no allegations that defendants' conduct in any way interfered with his person or property, nor does it set forth any measure of damages.[9] *See* Reilly's Am. Compl. ¶¶ 36–39. Additionally, several of plaintiff's allegations involve conduct that simply does not constitute "process" under

New York law. *See Bd. of Educ. of Farmingdale Union Free School Dist.*, 380 N.Y.S.2d at 642, 343 N.E.2d 278 (stating that claim for abuse of process requires the issuance of regularly issued process, civil or criminal).[10] Therefore, plaintiff's claim for abuse of process is dismissed.

Plaintiff's final tort claim is that the defendants "tortiously interfered with, respectively, the contractual relationship [plaintiff] had and has with his attorney, and/or the attorney-client relationship [plaintiff] has and had with the attorney." Reilly's Am. Compl. ¶ 40. To state a claim for tortious interference with contract, plaintiff must allege "the existence of a valid contract between the plaintiff and a third party . . . defendant's intentional procurement of the third-party's breach of the contract without justification [and] actual breach of the contract." *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 82, 668 N.E.2d 1370 (1996). In this case, defendants' allegedly

---

**9.** Plaintiff maintains that defendants undertook actions improperly aimed at identifying and sanitizing the Deal Files. Assuming, *arguendo*, that *res judicata* does not apply to such claims, and that the other elements of plaintiff's abuse of process claim have been adequately pled, plaintiff nonetheless fails to allege how defendants' actions with respect to the Deal Files interfered with his person or property or otherwise damaged him. This is likely the case because any potential damages flowing from defendants' discovery misconduct were avoided by Judge Conti's adverse inference instruction and preclusion order at trial. As Judge Conti concluded in denying plaintiff's request for default judgment, defendants' discovery misconduct did not significantly prejudice plaintiff's presentation of his case such that additional sanctions were warranted.

Plaintiff also alleges that by overstating the judgment by $2,000, defendants intended to induce plaintiff into knowingly accepting an incorrect amount, thereby foreclosing plaintiff's ability to bring certain subsequent actions-including, ironically, many of those now before the Court. Plaintiff again fails to al-

lege that he suffered any damages as a result of the overstatement, and, in light of his ability to bring the instant action, as well as the ease with which he could simply reject the excess amount, it is difficult to craft any theory of damages based upon such an overstated judgment.

**10.** According to plaintiff, defendants' abused process by delaying production of the Deal Files and attempting an *ex parte* court communication. *See* Reilly's Am. Comp. ¶ 35. Neither of these acts constitute regularly issued process, criminal or civil, as required under New York law. Even if plaintiff's allegations were sufficient to satisfy the first element of his abuse of process claim, he again fails to adequately plead the issue of damages. Plaintiff alleges that through their discovery misconduct-in particular, that relating to the Deal Files-defendants sought to and were successful in diminishing plaintiff's eventual recovery. Far from setting forth "actual or special damages," however, plaintiff's allegations are purely speculative.

tortious interference was contacting "an attorney who formerly represented [plaintiff] in [*Reilly I*]," during the post-remand phase. Reilly's Am. Compl. ¶ 10d. Although plaintiff seems to concede in his Amended Complaint that his attorney was no longer representing him at the time of the alleged interference, *see* Reilly's Am. Compl. ¶ 10, plaintiff contends that whether there was a valid contract at the time of the alleged interference is an issue of fact. Plaintiff's claim nonetheless fails for the simple reason that even if the attorney was representing plaintiff at time of the claimed violation, plaintiff does not allege that defendants induced the third-party attorney to breach their contract, or that a breach actually occurred. Accordingly, plaintiff's complaint fails to state a claim for tortious interference with a contract.

**IV. Sanctions**

■ Defendants move for sanctions pursuant to Fed. R. Civ. Proc. 11 and 28 U.S.C. § 1927, and for an order requiring plaintiff to seek leave of court before filing any further actions. The district court has broad discretion in determining whether to grant Rule 11 sanctions. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402–05, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Rule 11 sanctions are appropriate where a person signs a filing for "an improper purpose such as to delay or needlessly increase the cost of litigation," or "without a belief, formed after a reasonable inquiry" that the argument is non-frivolous. *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994). In assessing a claim for Rule 11 sanctions, courts apply a standard of "objective unreasonableness." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.1997) (internal quotes omitted).

Defendants have also requested sanctions pursuant to 28 U.S.C. § 1927. Sec-

tion 1927 allows a court to impose sanctions when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999) (internal quotes omitted), and obliges attorneys throughout the litigation "to avoid dilatory tactics." *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1261 (2d Cir.1996). Unlike Rule 11's objective standard, § 1927 requires the additional showing of subjective bad faith. *See Lapidus*, 112 F.3d at 96.

In this case, the Court does not find that plaintiff has pursued his claims in so unreasonable a manner as to warrant the issuance of Rule 11 sanctions. Nor has plaintiff evidenced the sort of bad faith that would make § 1927 sanctions appropriate. The Court, therefore, denies defendants' request for sanctions pursuant to Rule 11 and § 1927. However, because the Court finds that plaintiff's claims either have been previously litigated or are legally insufficient, the Court grants defendants' request for an order requiring plaintiff to seek leave of Court before filing any further actions relating to his employment with defendants or the subsequent litigation related thereto.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss plaintiff's Amended Complaint with prejudice is granted and defendants' motion for sanctions pursuant to Rule 11 and § 1927 is denied. Defendants' request for an order requiring plaintiff to seek leave of Court before filing any further related actions is granted. The Clerk of the Court is directed to close the above-captioned action.

**It is SO ORDERED.**